UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROL STEPIEN, | CASE NO. 2:21-cv-01410-LK |
| Plaintiff, | |
| v. | ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY |
| GINA RAIMONDO, | |
| Defendant. | |

This matter comes before the Court on Defendant Gina Raimondo's Motion for Summary Judgment, Dkt. No. 34, and on Plaintiff Carol Stepien's Motion for Partial Summary Judgment, Dkt. No. 51. Also before the Court are Stepien's motions to seal, Dkt. Nos. 53, 72; Stepien's motion to exclude Defendant's expert economist, Dkt. No. 49; and Defendant's motion to exclude certain testimony of Stepien's expert in human resources and investigation issues, Dkt. No. 32.

Stepien is a former employee of the National Oceanic and Atmospheric Administration ("NOAA") in Seattle. She contends that NOAA discriminated against her based on her sex and age, subjected her to a hostile work environment, and retaliated against her when she complained. NOAA counters that Stepien engaged in various forms of misconduct, including mistreating

colleagues, as detailed in an extensive, independent investigation.[1] For the reasons set forth below, the Court grants in part and denies in part the motions for summary judgment, denies Stepien's first motion to seal, grants in part and denies in part Stepien's second motion to seal, grants NOAA's motion to exclude, and grants in part and denies in part Stepien's motion to exclude.

## I.   BACKGROUND

Stepien worked at the Pacific Marine Environmental Laboratory ("PMEL"), a lab within NOAA, an agency in the Department of Commerce. Dkt. No. 28 at 2. Stepien contends that while at PMEL, she was subjected to a hostile work environment, suspended and ultimately discharged from employment based on her sex and age, and retaliated against for making discrimination complaints. *Id.* at 25–26.[2] She asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16(a) and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a). Dkt. No. 28 at 25–26.

## A.   Stepien Is Hired by NOAA

In 2016, NOAA hired Stepien as a Supervisory Oceanographer in PMEL in the Office of Oceanic and Atmospheric Research ("OAR").  Dkt. No. 39 at 1; Dkt. No. 35-14 at 2. Throughout the relevant time, Stepien served as the division leader for PMEL's Ocean Environment Research Division ("OERD"), where she was responsible for overseeing six research reporting groups. Dkt. No. 28 at 4; Dkt. No. 35-14 at 2. The OERD research groups included scientists and research technicians who were federal employees, contractors, and employees of Cooperative Institutes ("CIs") with the University of Washington and other universities. Dkt. No. 28 at 4.

---

[1] Raimondo is the proper defendant as the head of the Department of Commerce, 42 U.S.C. § 2000e-16(c); Dkt. No. 28 at 2, but for ease of reference, the Court refers to the defendant as NOAA.

[2] Stepien was born in 1958. Dkt. No. 70-8 at 2.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY
- 2

Stepien also founded and led the PMEL Genetics and Genomic Group ("G3"). *Id.* at 4; *see also* Dkt. No. 35-9 at 2. PMEL operates the G3 lab in conjunction with the University of Washington's two CIs: the Joint Institute for the Study of the Atmosphere and Ocean ("JISAO"), and the Cooperative Institute for Climate, Ocean, and Ecosystem Studies ("CICOES"). Dkt. No. 35-9 at 2. Stepien was responsible for her genomics lab, the science of that lab, finding funding sources, and supervising the personnel in other lab groups. Dkt. No. 39 at 2–3; *see also* Dkt. No. 35-14 at 2–3. The University of Washington, not NOAA, employed the CI employees who worked at the NOAA facility in Seattle. *See* Dkt. No. 36 at 1; Dkt. No. 35-14 at 3.

When Stepien was hired, Christopher Sabine was the director of PMEL, and Jim Guyton was the deputy director. Dkt. No. 39 at 1–2. After Sabine left PMEL, Gary Matlock assumed the duties of acting director of PMEL, Dkt. No. 35-23 at 4, and then Michelle McClure took over as the director in February 2019 with Guyton continuing as deputy director, Dkt. No. 35-24 at 4. *See also* Dkt. No. 35-1 at 2.

**B.      Guyton and Stepien's Working Relationship Is Challenging from the Start**

Guyton and Stepien had disagreements from the start of Stepien's employment with NOAA. According to other employees, Guyton had to become involved when Stepien refused to follow instructions regarding her move to the Seattle area and the transfer of her personal and professional materials. Dkt. No. 37 at 2 (travel coordinator Carlie Konkol noting that Stepien had violated federal travel regulations, so Guyton became involved); Dkt. No. 45 at 1–2 (support services specialist Nancy Curl explaining that she involved Guyton when Stepien refused to follow instructions regarding her move and transfer to PMEL); Dkt. No. 46 at 1–2 (property custodian William Parker explaining that he elevated an issue to Guyton when Stepien was not following his directions regarding her move). Stepien complained "a lot" that "[t]he lab space was not what she expected and there were issues with transporting the equipment she wanted" from her prior

employer. Dkt. No. 39 at 2. Stepien and Guyton disagreed about "some of the procedures and protocols" regarding those issues, and according to Sabine, Guyton "was absolutely following the letter of the law and doing what he could" to accommodate her requests. *Id.* (Sabine noting that he "would explain the rules and regulations to her that we had to follow in the federal government").

Around the same time, Guyton conveyed to Matlock his concern that Stepien might raise false allegations against him. Dkt. No. 70-7 at 4–5. That concern seemed to be based at least in part on the fact that Guyton learned that Stepien had filed a discrimination lawsuit against a previous employer. *Id.* at 5–6. According to Matlock, Guyton did not view the previous lawsuit "as a positive thing." *Id.* at 8.

In December 2017, Guyton told Stepien "not to be surprised if [she] received an official complaint at some time." Dkt. No. 52-5 at 5. A few days later, Stepien received email and phone inquiries "from the DOC Office of the Inspector General . . . regarding a complaint asking about the equipment transfer" from her prior job "and also about [her] time at work." *Id.* Stepien learned about the substance of the underlying complaint years later, after she left NOAA. Dkt. No. 71 at 2–3.

**C.   Stepien Complains of Discrimination in 2018 and Then Files a Formal Complaint**

In October 2018, Matlock conducted Stepien's performance review and rated her a "5/5 for research and a 5/5 for leadership." Dkt. No. 71 at 5. Shortly thereafter, Guyton asked Stepien for her performance ratings. *Id.*

According to Stepien, after Guyton reviewed the ratings, he "publicly yelled at [her]" and "questioned/berated [her] publication record" during a meeting called by James Shambaugh, PMEL Deputy Division Leader, with PMEL leadership about accounting for publication credentials. *Id.*; *see also* Dkt. No. 35-22 at 11–12. Guyton believed that an emergency meeting should be called to discuss whether Stepien's name should be removed as an author from her

1    interns' and students' publications. Dkt. No. 35-22 at 11. However, PMEL policy allowed the

2    student's supervisor to "get full accreditation because of all the work they put in towards the

3    student's research" and PMEL Senior Scientist Richard Feely conveyed that information to

4    Guyton. Dkt. No. 70-11 at 3. Stepien was concerned that Guyton appeared to be trying to "change

5    the rules for PMEL publications," while she believed that "[a]ny decision to change to the

6    publication rules should wait until the new Director" was on board. Dkt. No. 70-12 at 3–4.

7        After the meeting, on October 23, 2018, Stepien wrote an email to Guyton stating, "Your

8    actions during yesterday's staff meeting were unprofessional and I fear that they may reflect gender

9    bias against me as a woman scientist leader." *Id.* at 4; *see also* Dkt. No. 71 at 6. Stepien forwarded

10   her email to Matlock. Dkt. No. 70-12 at 3. Stepien also emailed Feely and stated that the issue

11   reflected gender discrimination. Dkt. No. 70-12 at 2. Stepien further stated in an October 24, 2018

12   email to Matlock that she "need[ed] to be protected from Guyton's reprisal," believed that some

13   unidentified action was "discriminatory," and sought whistleblower protection. Dkt. No. 52-2 at

14   3. Matlock offered to meet with her during his upcoming visit to PMEL and provided her

15   information and links regarding the Equal Employment Opportunity ("EEO") process and

16   obtaining whistleblower protection. *Id.* at 2 (telling Stepien that "[o]ne important factor in this

17   process is timely contact with an EEO counselor"). When Matlock met with Stepien, she

18   "indicated steps she had taken to address the allegation" and declined when Matlock asked if there

19   was anything else he could do. Dkt. No. 55 at 3.

20       On November 10, 2018, Stepien emailed Matlock, and copied EEO counselor Michelle

21   Moore, complaining about an anticipated "Caps conversion," an issue that Stepien does not explain

22   in her filings. Dkt. No. 70-13 at 2. Stepien wrote that the conversion was "possible age

23   discrimination." *Id.* Matlock responded, "[a]s for the allegations concerning age discrimination, it

24   appears as though you're [sic] conveying them to Michelle Moore would initiate an EEO

complaint," and requested that Moore confirm. *Id.* Stepien does not indicate that she followed up on the issue with EEO office. *See generally* Dkt. Nos. 64-1, 71.

**D.      Stepien Is Issued a Letter of Reprimand in December 2018**

Following the October 2018 meeting, Stepien sent an email to Shambaugh stating that she would "not allow [Guyton] to denigrate and deride" her career, qualifications, and reputation "for his personal selfish[] grab for power and money." Dkt. No. 35-3 at 2. She further wrote that Guyton had been "going after me since I first set foot in the door at PMEL" and "[i]t's like he is the gang rapist and I am shoved in the room with a hand over my mouth in the dark. Who are you???" *Id.*

On December 13, 2018, Matlock issued Stepien a Letter of Reprimand ("LOR") stating that her October 25, 2018 email with its "gang rapist" reference constituted conduct unbecoming a federal employee. *Id.* He advised Stepien that if she had concerns about how her co-workers were treating her, she should report those concerns to Matlock immediately because it was his "job to make certain all feel safe within the work environment." *Id.* Her email to Shambaugh "was unprofessional, completely inappropriate, and caused concern by [her] coworkers." *Id.* Stepien was reminded that as a supervisor, she was "supposed to set the example" and was "held to a higher standard." *Id.* at 3 (noting that Matlock "expect[ed] and demand[ed] professionalism and civil treatment of all employees within the work environment"). The LOR stated that it would become part of her official personnel folder for a period of two years from the date of the letter, "and may be considered in any subsequent disciplinary action during this reckoning period." *Id.*

Guyton also received a letter of reprimand for "publicly yelling" at Stepien in the October 2018 meeting. Dkt. No. 71 at 13; *see also* Dkt. No. 35-22 at 6–7, 13; Dkt. No. 55 at 3.

1   **E.      Stepien Recommends Discipline for John Doe, an Alleged Comparator in this Case**

2          Around the same time, Stepien recommended discipline for John Doe,[3] an oceanographer

3   Stepien supervised, based on his alleged misconduct related to his attendance at a conference in

4   Tunisia in 2017. Dkt. No. 71 at 3–4. Guyton initiated two investigations of Doe, one to NOAA

5   Security and the other to the Office of Inspector General. *Id.* at 4.

6          Stepien concluded that Doe solicited funds from a foreign organization to travel to the

7   conference using his NOAA affiliation, which she believed violated "several NOAA policies

8   including NOAA's ethical guidelines, and [constituted] misappropriation of funds." *Id.* at 3. Doe

9   also presented a slide with a NOAA logo without getting permission to do so or including a

10  disclaimer that he was not representing NOAA at the conference. *Id.* at 4–5. Further, he

11  "misrepresented that he was merely a 'reviewer' at the conference when in fact he was invited as

12  a 'keynote speaker,'" and falsely responded "no" in writing when asked if his slides bore the

13  NOAA logo. *Id.* About a year before this incident occurred, Doe had received an LOR "for falsely

14  claiming that his paper was already published when it was merely in review (and needed

15  revision)[.]" *Id.* at 7.

16         Stepien recommended that Doe be removed from his position for inappropriate conduct

17  and providing inaccurate information. *Id.* at 5; Dkt. No. 84-1 at 10; Dkt. No. 86-1 at 2–7 (notice

18  of proposed removal). Matlock instead imposed a three-day suspension after considering Doe's

19  response to the notice and other factors. Dkt. No. 84-1 at 12–13; Dkt. No. 86-2 at 2–3 (decision on

20  notice of proposed removal). Matlock noted that Doe did not necessarily need to obtain permission

21  to travel or use the logo, and it was "commonly understood that the inclusion of the NOAA logo

22

23  ───────────────────────────────
    [3] The parties have agreed to refer to the employee by the pseudonym "John Doe" to protect his privacy, and the Court

24  does the same. Dkt. No. 69 at 5 n.6. Stepien's declaration does not specify when she was asked to investigate Doe,
    but she issued her proposed notice of removal in December 2018. Dkt. No. 86-1 at 2.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY
- 7

on slide presentations does not in and of itself mean that the presentation reflects NOAA's positions." Dkt. No. 84-1 at 9, 11–12, 21–22. However, Matlock also concluded that Doe was not truthful in the investigation when he answered "No" to the question of whether his slides included the NOAA logo. *Id.* at 29–30.

## F.    Problems Continue in 2019

In January 2019, Stepien lodged what she describes as an "informal complaint" against Guyton because she believed that the LOR she received was retaliatory and it "markedly contrasted with [Matlock's] empathetic approach to [her] younger male colleague, Doe[.]" Dkt. No. 71 at 7. She requested that Matlock facilitate a mediation between her and Guyton, but that did not occur. *Id.* Stepien decided not to file a formal complaint in the hopes that the situation would improve under McClure's new leadership. *Id.* at 8. Guyton became Stepien's direct supervisor on April 28, 2019 despite her "informal" complaint against him. *Id.*[4]

On May 9, 2019, Guyton sent Stepien a series of emails "chastising" her for leaving part of a two-day training for a one-hour work-related meeting. Dkt. No. 71 at 8–9; Dkt. No. 35-4. On May 12, 2019, "traumatized by Guyton's email attacks and continued persistence in his trying to tarnish [her] reputation with McClure, [Stepien] informed McClure via email that [she] would be filing a formal EEO complaint about gender discrimination and harassment and harmful workplace concerning [her] ongoing treatment at the hands of Guyton." Dkt. No. 71 at 9.[5] Stepien filed a harassment complaint on May 24, 2019, *id.* at 10, a formal EEO complaint with the NOAA Office

---

[4] Matlock suspected that Guyton was misclassified and should have had supervisory authority as a deputy director, so in or around April 2019, Matlock requested a "desk audit" of his position. Dkt. No. 55 at 3. A separate office conducted the audit and concluded that Guyton's status was misclassified. *Id.* "In order to be consistent with a change . . . within OAR, to make deputy directors supervisors of most of the high-level positions at each lab the same, [Guyton] was made supervisor over not just [Stepien] but all the division directors at PMEL." *Id.* at 3–4; *see also id.* at 4 (noting that "[a]ll of the deputy directors at OAR are now supervisors of all the high level positions at each lab").

[5] Stepien contends that her email to McClure is at Exhibit U, but it is not. *Id.*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY
- 8

1    of Civil Rights on June 30, 2019, *id.* at 11, and a formal complaint of discrimination on July 1,

2    2019, Dkt. No. 52-5 at 2.

3         On May 26, 2019, Stepien emailed McClure to "keep [her] in the loop" that she filed a

4    harassment complaint against Guyton "across all three offices (EEO and Civil Rights)." Dkt. No.

5    35-6 at 2. Stepien stated that she had "very strong evidence of 2.5 years of continued harassment,

6    gender, and age discrimination by Guyton against [her], which resonates throughout his growing

7    control of OERD and PMEL resources, etc." *Id.* Stepien took issue with Guyton's leadership,

8    asked to report directly to McClure, and stated that Guyton should be fired, placed on

9    administrative leave, "or at the very least, be transferred elsewhere like 'a bad priest.'" *Id.* She

10   now contends that she included the "bad priest" reference to "convey urgency," but her email lacks

11   that explanation. Dkt. No. 71 at 9; Dkt. No. 35-6 at 2–3.

12        On June 17, 2019, McClure wrote an email to Stepien in which she noted two concerns

13   regarding a presentation Stepien made at a recent conference. Dkt. No. 35-7 at 4. First, Stepien

14   had promised McClure and Mark Strom from the Northwest Fisheries Science Center ("NWFSC")

15   that she would share her presentation before she gave it, but she did not share it until 8:00 p.m. the

16   night before her 5:00 a.m. presentation, leaving them insufficient time for meaningful review. *Id.*

17   ("We've talked about providing time for ample review before, and this was not acceptable.").

18   Second, Stepien used a slide in her presentation that Strom had specifically asked her not to

19   include. *Id.* McClure noted that NWFSC and Strom in particular were "key potential partners" of

20   PMEL, and Stepien's actions undermined trust. *Id.* ("Our relationships with other NOAA labs are

21   a vital part of our relevance, and will affect strongly our ability to maintain and build funding and

22   capacity. I have described previously that this relationship was strained, and these actions do not

23   help rebuild it.").

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY
- 9

1

**G.      Stepien Is Suspended**

2

On July 1, 2019, McClure proposed a 10-day suspension for Stepien for conduct

3

unbecoming and failure to follow instructions, for, among other things, Stepien's use of the

4

NWFSC slide. Dkt. No. 35-2 at 2–7. Stepien responded and noted that her inclusion of the slide

5

was a mistake. Dkt. No. 71 at 12. She also contended that she was being subjected to a hostile

6

work environment. Dkt. No. 52-7. Matlock referred that allegation to another team. Dkt. No. 35-8

7

at 2.

8

After reviewing McClure's proposal and Stepien's response, on August 5, 2019, Matlock

9

issued the 10-day suspension for conduct unbecoming and failure to follow instructions. Dkt. No.

10

35-8 at 2–4. Matlock noted Stepien's 2018 LOR for calling Guyton a "gang rapist," and that

11

Stepien then "submitted another email where [she] refer[red] to Mr. Guyton as a 'bad priest.'" *Id.*

12

at 3. Matlock expressed "concern[] that [Stepien was] engaging in misconduct that seem[ed] to be

13

developing a pattern and [wa]s repeating." *Id.* He elaborated on his concerns:

14

> This type of reference is severely egregious. It is not just name calling that concerns
> me about these references, but also the very bad connotations and damages to

15

> reputations that can accompany name calling of this nature. A bad priest gives the
> perception that you believe Mr. Guyton is similar to a person who has engaged in

16

> the crime of pedophilia[,] as "bad priest" is largely and widely known due to the
> media reports of this type of criminal behavior. This is very concerning and highly

17

> inappropriate. Your pointed emails were unprofessional.

18

*Id.* Matlock further noted that Stepien had "been told previously that supervisors are held to a

19

higher standard." *Id.* The letter explained that "[t]he inclusion of a slide in a presentation is not a

20

small matter to be easily overlooked when the inclusion resulted in [Stepien's] presenting that slide

21

without the permission of one of our partners even after [Stepien was] told to remove it from [her]

22

presentation by that same partner." *Id.* The letter noted that Stepien was "well aware there were

23

issues between the [NWFSC] and PMEL" and the "submission of that one slide, after the request

24

to remove it was not honored, was perceived by [PMEL's] partner to be yet another issue with trusting PMEL," which was "wholly and completely unacceptable." *Id.*

Matlock "determined that [the] facts of the case fully support the charges and specifications and that a 10-calendar day's suspension for these charges and specifications is appropriate to correct [Stepien's] misconduct and to promote the efficiency of the service." *Id.* He expressed hope that the suspension would impress upon Stepien "the gravity of this situation" and cautioned that "[s]hould this or other types of misconduct continue to occur, it may result in a more serious penalty up to and including removal." *Id.*

Stepien wrote to Matlock on July 7, 2019 with an "appeal" of the suspension "request[ing] reconsideration of this administrative leave/reprimand, and request[ing] the opportunity to undergo formal mediation." Dkt. No. 52-7 at 2. She noted that she had requested mediation before, that her request was not acted upon, and "[a]s a consequence, . . . [she] continued to be subjected to [an] ongoing hostile workplace, non-sexual gender discrimination, and retaliation," as raised in her "January 26 complaint." *Id.* Stepien also responded to a new allegation from McClure that Stepien had entered the NWFSC without permission. *Id.* According to McClure, she offered Stepien mediation at some point and Stepien declined the invitation as too late. Dkt. No. 70-17 at 9.

On September 2, 2019, Stepien wrote to an EEO counselor to supplement her EEO complaint. Dkt. No. 52-20 at 1. She wrote that the suspension was "a dramatic escalation of the hostile work place and retaliation against [her] recent filing of gender and age discrimination" complaints in January and June 2019. *Id.*

1

2

**H.  Employees Complain, an Investigation Ensues, and Stepien Is Placed on Paid Administrative Leave**

In the summer of 2019, complaints began to surface about Stepien's treatment of other employees. Ellen Lee, a JISAO intern, approached both McClure and Abby Zorn, a human resources manager at JISAO, to complain about Stepien. Dkt. No. 35-24 at 5; Dkt. No. 36 at 2; Dkt. No. 41 at 4. In early 2020, three more CI employees complained to Zorn about Stepien's conduct, including that she was "very critical with staff[.]" Dkt. No. 36 at 1–2. After JISAO employee Dr. Beth Slikas left the program, Zorn was concerned that "it really started to look like a pattern of bad conduct and it was causing very high turnover among [CI] employees." *Id.* at 2. Zorn concluded that she had to formally notify NOAA, and she did so in May 2020. *Id.*; Dkt. No. 36-1 at 2.

Around the same time, Dr. David Butterfield, the supervisor for most of the CI employees assigned to Stepien's lab, explained to McClure that three CI employees had resigned and that "there was so much turnover because employees were not getting along with [Stepien] and it was hurting lab productivity." Dkt. No. 40 at 2–3; Dkt. No. 42 at 3 (Dr. Andrews stating that she "left PMEL because [Stepien] created a toxic work environment" and that she raised her concerns with Dr. Butterfield). McClure also received complaints in May 2020 that there was poor management of Stepien's lab, that Stepien "had engaged in hostile behavior toward multiple people in the lab," and that "there were scientific integrity issues." Dkt. No. 35-14 at 3; *see also* Dkt. No. 35-17 at 13; Dkt. No. 38 at 5.[6]

---

[6] Some of the declarations NOAA filed are missing their referenced attachments. *See, e.g.*, Dkt. No. 40 at 3; Dkt. No. 43 at 1; Dkt. No. 47 at 1. However, based on the declarations' descriptions of those attachments, they do not seem relevant or indicative of a disputed issue of fact. Moreover, the Court focuses on the information known to the decision makers at the relevant time, as NOAA notes is proper. *See, e.g.*, Dkt. No. 34 at 22.

1    McClure determined that the scope of the concerns expressed "was a little too complex and

2    it would benefit from an independent investigation." Dkt. No. 35-24 at 7. McClure and a human

3    resources specialist contacted the National Appeals Office to request that they investigate. *See* Dkt.

4    No. 35-9 at 2. They requested an "'overall picture' of PMEL's G3 lab, including how Dr. Stepien

5    communicates with personnel; whether Dr. Stepien has retaliated against personnel; and whether

6    Dr. Stepien has engaged in scientific misconduct." *Id.* at 2–3; *see also id.* at 3 (listing the

7    allegations, including that Stepien had "behaved inappropriately and created a hostile work

8    environment"). After jointly making the request, McClure was not involved with the investigation.

9    Dkt. No. 35-24 at 7. The purpose of requesting an independent investigation was to insulate it from

10   any bias by management or by the complaining employees. *Id.*

11   Beginning on May 18, 2020, McClure placed Stepien on paid administrative leave while

12   the investigation was conducted "[t]o protect the integrity of the inquiry and protect witnesses from

13   any perceived or actual retaliation for their participation in the inquiry[.]" Dkt. No. 35-14 at 3; *see*

14   *also* Dkt. No. 35-11 at 2 (writing that McClure "determined that administrative leave is appropriate

15   while the Agency conducts an administrative inquiry and considers the possibility of appropriate

16   administrative action, as warranted"); Dkt. No. 70-21 at 2–3 (email to Stepien regarding leave).

17   When notified of the leave, Stepien responded, "I assume that this [is] in retaliation for my EOC

18   complaint." Dkt. No. 52-10 at 2.

19   Stepien's leave was extended in June 2020 because the investigation was not yet complete,

20   and she remained on leave until her eventual departure from NOAA in April 2021. Dkt. No. 52-

21   13 at 2; Dkt. No. 71 at 14. Stepien updated her EEO complaint to allege that being placed on

22   administrative leave and the extension thereof constituted retaliation for filing her EEO complaint.

23   Dkt. No. 52-19 at 4–7.

24

1    The investigation was conducted by Steven Goodman and Kirk Essmyer, inquiry officials

2    from a branch of NOAA that was separate from Stepien's management chain. Dkt. No. 35-26 at

3    5. The investigators believed that they conducted an objective, impartial, and thorough

4    investigation. *Id.* at 7–8.

5         The investigators interviewed 21 employees and reviewed numerous documents. Dkt. No.

6    35-9 at 3 n.9. Their September 2020 report found "by a preponderance of the evidence that the

7    allegation that Dr. Stepien has behaved inappropriately is ***substantiated***. Overwhelming

8    interviewee and documentary evidence supports that Dr. Stepien has repeatedly subjected both

9    Federal and non-Federal personnel to behavior that a reasonable person would find intimidating,

10   hostile, or offensive." *Id.* at 32. They noted that "[e]vidence also supports that Dr. Stepien's

11   conduct has been disruptive to the workplace, that Dr. Stepien has not interacted with personnel in

12   a responsible and professional manner, and that her conduct did not comport with the high

13   standards of integrity and conduct required of all Federal employees." *Id.* Specifically, they found

14   that the negative behaviors included "routinely disparaging her G3 Lab and PMEL coworkers

15   verbally with others present, and through email with others copied; subjecting personnel, including

16   an undergraduate intern, to an unprofessional and hostile environment; using her position within

17   NOAA to retaliate against a JISAO postdoc applicant; and yelling or inappropriately raising her

18   voice at G3 and PMEL coworkers." *Id.* And "all but one of the G3 Lab's current and former

19   personnel stated that Dr. Stepien had fostered a [hostile work environment] within the lab" and the

20   lone dissenter "still felt strongly that Dr. Stepien had created a 'toxic' work environment in the G3

21   Lab." *Id.* Based on their investigation, the investigators found "overwhelming evidence" to

22   conclude that there was "inappropriate conduct, inappropriate actions that resulted in low morale,

23   turnover, and just general dissatisfaction and lack of productivity[.]" Dkt. No. 35-26 at 6.

24

The investigators also substantiated the allegation that Stepien had mismanaged the G3 lab. Dkt. No. 35-9 at 33, 45–46 (noting, among other things, that "documentary evidence and a vast majority of interviewee statements support that Dr. Stepien's micromanagement, lack of mentorship, and misuse of personnel has negatively impacted G3 personnel's ability to successfully perform their mission, and build collaborative relationships with scientists outside the G3 Lab"). The investigators also concluded that "evidence indicates that Dr. Stepien's inappropriate behavior and management practices directly caused the G3 Lab's abnormally high turnover rate." *Id.* at 46. When interviewees were asked "whether they believed Dr. Stepien was capable of becoming an effective PMEL leader, almost all interviewees stated that she could not." *Id.* Finally, the investigators concluded that the allegation that Stepien had engaged in scientific misconduct was beyond the scope of the inquiry. *Id.*

The investigators also submitted a supplemental memorandum on October 20, 2020, listing additional areas for PMEL to investigate including improper supervision of JISAO employees; improper disclosure of government information; more conduct unbecoming a federal employee; and harassment reporting concerns. Dkt. No. 35-26 at 7; Dkt. No. 35-13.

## I.      Stepien Is Removed from Her Position

In January 2021, after receiving the report from the investigators, McClure proposed removing Stepien from her position for 11 specifications of failure to follow supervisory instructions and 11 specifications of conduct unbecoming. *See generally* Dkt. No. 35-14.

As for the failure to follow instructions, McClure noted that she ordered Stepien not to access NOAA facilities, use her personal email for NOAA business, or contact NOAA employees except for two approved projects while she was on leave. Dkt. No. 35-12 at 2; Dkt. No. 35-14 at 5. However, Stepien did not follow those directives and continued to perform non-sanctioned work-related activities and send unauthorized communications while she was on leave. Dkt. No.

35-13 at 14–15; Dkt. No. 35-14 at 4–7. McClure wrote, "Your failure to follow instructions cause[d] me to lose faith and confidence in your abilities to perform your duties in conformance with applicable laws, policies and procedures." Dkt. No. 35-14 at 9.

As for the conduct unbecoming, McClure noted that "[t]he investigation uncovered significant evidence that [Stepien] communicated with Dr. Slikas in an unprofessional and abusive manner." *Id.* at 5. Slikas resigned her position with JISAO and cited Stepien's treatment of her as one of the reasons why. *Id.* The notice of proposed removal also recounted that Stepien sent inappropriate emails to colleagues, *id.* at 7–9, and to three outside professionals who served as references for a post-doctoral applicant, *id.* at 7. *See also id.* at 9 (noting that Stepien's "emails to . . . professional references could be seen as retaliatory and damages NOAA's reputation as a potential employer"). After enumerating Stepien's instances of misconduct, McClure wrote, "Any one of these serious lapses in your conduct would be grounds for your removal," and thus proposed removing Stepien from her position. *Id.* at 9–10; *see also id.* at 2.

Stepien submitted a 70-plus-page rebuttal to the notice of proposed removal. Dkt. No. 71 at 16; Dkt. No. 52-15. Stepien averred that the notice was "the culmination of 1.5 years of retaliation and discrimination against [her] for filing EEO complaints alleging Gender based discrimination, hostile work environment, and retaliation for opposing discriminatory activities at NOAA." Dkt. No. 52-15 at 2.

Matlock reviewed the proposed removal, the evidence accompanying the proposal, and Stepien's response. Dkt. No. 35-15 at 2. He sustained 10 of the 11 specifications for failure to follow supervisory instructions. *Id.* He concluded that specification 11 was not sustained because Stepien "arguably provided a valid reason" for attending a conference during her leave on behalf of another entity rather than as a NOAA employee. *Id.* As for the other 10 specifications in that category, Matlock explained that McClure "clearly instructed [Stepien] that [she was] not to

contact other NOAA employees or cooperative institute employee[s] and yet the evidence shows that [Stepien] continued to reach out to others and conduct work that [she] was not authorized to do" during her leave. *Id.*

Matlock also concluded that Stepien engaged in conduct unbecoming. *Id.* He found that all of the specifications in that category were supported by Stepien's emails showing that "[t]he way [she] spoke to and about JISAO employees was unacceptable." *Id.* Some of her emails were "gratuitously demeaning and humiliating." *Id.* In addition, the emails Stepien sent to a candidate's professional references were "unnecessary and unprofessional." *Id.*

Matlock also addressed the points Stepien made in her response to the notice of proposed removal. *Id.* at 3–4. He explained that although Stepien contended that she had not received notice or training on how to work with others, she was in a leadership position within OAR and expected to treat others with professionalism and respect even without specific training on that issue. *Id.* at 3. He rejected Stepien's argument that she had not received the CI handbook for the same reasons. *Id.* And Matlock noted that she had been disciplined before about her need to improve her interactions with others and follow instructions, but she did not heed those warnings or ask for help doing so. *Id.* While Stepien noted that she was under personal stress, Matlock responded that the numerous instances of misconduct reflected "a broader pattern of behavior that cannot be explained or excused by difficult personal circumstances." *Id.* at 3–4.

Having found that Stepien failed to follow instructions and engaged in conduct unbecoming, Matlock considered the appropriate penalty. *Id.* at 2. He noted that Stepien "flouted [her] supervisor's instructions while [she] w[as] supposed to be on administrative leave, demonstrating an inability or unwillingness to follow instructions." *Id.* at 3. Matlock also noted that Stepien's unauthorized contact with a former intern during the leave was "especially inappropriate" because that intern was a witness and Stepien was placed on leave "to prevent [her]

1    from communicating with witnesses in the inquiry in a way that may influence their statements."

2    *Id.* Overall, her "inability follow instructions erode[d] NOAA's trust" in Stepien. *Id.* Matlock also

3    found that "[t]he sustained charges of conduct unbecoming [were] quite serious." *Id.* In particular,

4    one JISAO employee found Stepien's "treatment of her to be disrespectful and demoralizing and

5    cited that treatment as the reason she left the laboratory." *Id.* Stepien's conduct "contributed to a

6    poor work environment for [that employee] and others." *Id.* In addition, the emails Stepien sent to

7    a candidate's professional references "also could be seen as an attempt to embarrass or retaliate

8    against an applicant who decided not to join [Stepien's] lab," which "reflect[ed] poorly on

9    NOAA's reputation as a potential employer." *Id.*

10         Matlock also recounted that in her four years with the agency, Stepien had received a letter

11   of reprimand and 10-day suspension related to inappropriate communications with others. *Id.* at 4.

12   Although those actions "were meant to impress upon [her] the seriousness of [her] misconduct and

13   to correct [her] behavior," the misconduct continued. *Id.* He therefore "conclude[d] that [her]

14   potential for rehabilitation [wa]s low and that any lesser sanction would not effectively deter future

15   misconduct." *Id.* Matlock thus sustained the specifications, with the one exception noted above,

16   and issued a decision of removal in March 2021, effective as of April 10, 2021. *Id.* at 2, 4.

17         After Stepien was removed from her position, Shambaugh took over as the Acting Division

18   Director for OERD. Dkt. No. 70-28; Dkt. No. 71 at 17; Dkt. No. 76 at 1. Shambaugh was selected

19   for the position of OERD Director on a permanent basis in June 2023. Dkt. No. 76 at 2.

20   **J.    Stepien Files Suit**

21         Stepien filed this action in October 2021. Dkt. No. 1. Her second amended complaint

22   alleges three theories of liability: disparate treatment based on her sex and age, retaliation for

23   engaging in protected activity, and a hostile work environment based on sex and age. Dkt. No. 28

24   at 25–26.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY
- 18

1      Following discovery, the parties filed cross motions for summary judgment. NOAA moved

2  for summary judgment on all of Stepien's claims. Dkt. No. 34 at 2, 28. NOAA contends that only

3  actions about which Stepien timely complained are actionable for purposes of her discrimination

4  and retaliation claims, and those are the: (1) 10-day suspension, (2) paid administrative leave, and

5  (3) removal. *Id.* at 13–14. NOAA avers that it is entitled to summary judgment on those claims

6  because Stepien lacks evidence to support her disparate treatment and retaliation claims. *Id.* at 14–

7  22. Next, it argues that Stepien cannot prevail on her hostile work environment claim because it is

8  untimely, and because the complained of conduct was not severe, pervasive, or connected to her

9  gender, age, or protected activity. *Id.* at 22–27. Finally, it notes that even if any of Stepien's age

10  discrimination claims survive, she is not entitled to compensatory damages under the ADEA. *Id.*

11  at 27.

12      Stepien moved for partial summary judgment on discrete aspects of her claims for disparate

13  treatment and retaliation. Dkt. No. 51 at 1–2. Specifically, she asks the Court to rule as a matter of

14  law that:

15          1.      Defendants took adverse employment action against Plaintiff.

16          2.      Plaintiff opposed discriminatory practices.

17          3.      Defendants' affirmative defense of failure to mitigate damages is dismissed.

18  *Id.* at 2.

19                          **II.   DISCUSSION**

20  **A.   Summary Judgment Standard**

21      Summary judgment is appropriate only when "the movant shows that there is no genuine

22  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

23  Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this

24  stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In essence, the inquiry is

1   "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

2   it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

3        When parties file simultaneous cross-motions for summary judgment on the same claim,

4   the Court "must consider the appropriate evidentiary material identified and submitted in support

5   of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous.*

6   *Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001); *see also*

7   *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (the district court

8   "rule[s] on each party's motion on an individual and separate basis, determining, for each side,

9   whether a judgment may be entered in accordance with the Rule 56 standard." (cleaned up)). The

10   Court "giv[es] the nonmoving party in each instance the benefit of all reasonable inferences."

11   *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). However, to the extent

12   the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense

13   that, where the facts specifically averred by that party contradict facts specifically averred by the

14   movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

15        To establish that a fact cannot be genuinely disputed, the movant can either cite the record

16   or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an

17   adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

18   Once the movant has made such a showing, "the nonmoving party must come forward with specific

19   facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

20   *Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical doubt is insufficient, *id.* at 586,

21   as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89. Nor is it the Court's job to

22   "scour the record in search of a genuine issue of triable fact"; rather, the nonmoving party must

23   "identify with reasonable particularity the evidence that precludes summary judgment." *Kenan v.*

24   *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247,

251 (7th Cir. 1995)). The Court will enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.      Timeliness of Disparate Treatment and Retaliation Claims**

NOAA argues that Stepien timely exhausted her administrative remedies only for her suspension, paid administrative leave, and removal. Dkt. No. 34 at 13–14. "Before a federal civil servant can sue [her] employer for violating Title VII, [s]he must, among other things, 'initiate contact' with an Equal Employment Opportunity counselor at h[er] agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Green v. Brennan*, 578 U.S. 547, 549–50 (2016) (quoting 29 C.F.R. § 1614.105(a)(1)). Notably, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Lassair v. Wilkie*, No. 2:17-01638-RAJ, 2019 WL 5212959, at *3 (W.D. Wash. Oct. 16, 2019) (applying *Morgan* to an ADEA claim). Discrete acts include termination, failure to promote, denial of transfer, suspensions, or refusal to hire. *Morgan*, 536 U.S. at 114.

To exhaust administrative remedies for ADEA claims, federal employees have two options: they may either pursue administrative remedies or file a complaint directly in federal court after "g[iving] notice of [their] intent to sue at least thirty days before commencing suit[.]" *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008); *see also Shelley v. Geren*, 666 F.3d 599, 605 (9th Cir. 2012). If employees choose to pursue administrative remedies, then they must consult an EEO counselor within 45 days of an alleged discriminatory act. *Lassair*, 2019 WL 5212959, at *3 (citing 29 C.F.R. § 1614.105(a)(1)); *see also Merlo v. Wilkie*, 2:19-cv-05078-ODW(JCx), 2020 WL 5042776, at *4 (C.D. Cal. Aug. 25, 2020). Absent waiver, estoppel, or equitable tolling, failure

to comply with these regulations is "fatal to a federal employee's discrimination claim." *Lyons v. England*, 307 F.3d 1092, 1105 & n.5 (9th Cir. 2002).

NOAA argues that Stepien contacted an EEO counselor about the allegations she is pursuing in this case on May 27, 2019, so only allegedly discriminatory or retaliatory acts after April 12, 2019 are actionable. Dkt. No. 34 at 14. The December 13, 2018 LOR was issued before that date. Dkt. No. 35-3 at 2.[7] Stepien does not dispute that contention or argue any basis for tolling, waiver, or estoppel. *See generally* Dkt. No. 69. Therefore, the Court grants NOAA's motion for summary judgment regarding the letter of reprimand and any discrete act claimed to be discriminatory or retaliatory prior to April 12, 2019.

## C.    Disparate Treatment Claim Based on Title VII and the ADEA

Under Title VII, an employment discrimination plaintiff can establish a prima facie case by demonstrating that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004); *see also Crowe v. Wormuth*, 74 F.4th 1011, 1035–36 (9th Cir. 2023).

The ADEA requires that public sector personnel actions be made "free from" discrimination. *Babb v. Wilkie*, 589 U.S. 399, 405 (2020) (citing 29 U.S.C. § 633a(a)). "The Civil Service Reform Act of 1978, which governs federal employment, broadly defines a 'personnel action' to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews." *Id.* (citing 5 U.S.C. § 2302(a)(2)(A)). An

---

[7] Stepien contacted the EEO office about a different issue on October 29, 2018. Dkt. No. 64-1 at 2. Stepien does not argue that that contact, which preceded the December 2018 LOR, exhausted her administrative remedies for the LOR.

employee can establish a prima facie case of age discrimination by showing that she: (1) was a member of the protected class, (2) was performing her job in a satisfactory manner, (3) experienced an adverse employment action such as termination, and (4) was replaced by a substantially younger employee with equal or inferior qualifications. *Douglas v. Anderson*, 656 F.2d 528, 532–33 (9th Cir. 1981). A claimant can also satisfy the fourth element by showing that the adverse action occurred "under circumstances otherwise giving rise to an inference of age discrimination." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)). Where, as here, there is no direct evidence of age discrimination, a plaintiff "may prove discrimination using indirect, or circumstantial evidence, under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973)." *Lassair*, 2019 WL 5212959, at *4; *see also Shelley*, 666 F.3d at 607–08.

Once a plaintiff establishes a prima facie case of discrimination under either Title VII or the ADEA, the burden of production shifts to the defendant "to articulate a legitimate non-discriminatory reason for its adverse employment action." *Shelley*, 666 F.3d at 608 (ADEA); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (Title VII); *see also Opara v. Yellen*, 57 F.4th 709, 723 (9th Cir. 2023) (explaining that the burden on the employer "is one of production, not persuasion and involves no credibility assessment" (cleaned up)).

If defendant does so, then the burden shifts back to the plaintiff "to demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext" for discrimination. *Shelley*, 666 F.3d at 608. The plaintiff can "show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000)

1   (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). When a plaintiff

2   relies on circumstantial evidence to show pretext, she must "put forward specific and substantial

3   evidence challenging the credibility of the employer's motives." *Mayes v. WinCo Holdings, Inc.*,

4   846 F.3d 1274, 1282 (9th Cir. 2017) (quoting *Vasquez*, 349 F.3d 642). However, the "specific and

5   substantial standard is tempered by [the Ninth Circuit's] observation that a plaintiff's burden to

6   raise a triable issue of pretext is hardly an onerous one." *France v. Johnson*, 795 F.3d 1170, 1175

7   (9th Cir. 2015) (cleaned up).

8       As for the first two elements of the prima facie case, Stepien was female and over 40 years

9   old. Dkt. No. 70-29 at 6. And NOAA does not dispute Stepien's prima facie showing that she was

10  performing her job satisfactorily. Dkt. No. 74 at 7. The Court therefore proceeds to examine

11  whether she suffered adverse actions.

12      1.  Actionable Adverse Actions

13      Stepien asks the Court to grant her partial summary judgment holding that she suffered the

14  following adverse actions for purposes of her disparate treatment claim:

15      • August 9, 2019 final suspension; and

16      • March 31, 2021 final decision on removal.

17  Dkt. No. 51 at 14. Stepien also contends that the LOR was an adverse action, *id.*, but because that

18  claim is untimely, the Court denies her motion for summary judgment on that issue.[8]

19      For purposes of a discrimination claim, "an adverse employment action is one that

20  materially affects the compensation, terms, conditions, or privileges of employment." *Davis v.

21  Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (cleaned up); *see also Muldrow v. City of St.*

22

23  ---

[8] Even if Stepien had made a timely complaint about the letter of reprimand, the Court would grant NOAA's motion
for summary judgment on that claim—and deny Stepien's—because Stepien did not establish a prima facie case of
discrimination. No one was treated better for the same or similar conduct, and Guyton—the only comparator she

24  identifies for this issue—was treated the same and also issued a letter of reprimand. Dkt. No. 35-22 at 6–7, 13.

*Louis, Missouri*, 601 U.S. 346, 359 (2024) (a plaintiff "need show only some injury respecting her employment terms or conditions"). Stepien's motion regarding her suspension and termination appears to reflect a failure of the parties to adequately meet and confer, because NOAA indicates in response that it does not contest that the suspension and termination were adverse. Dkt. No. 63 at 1; *see* Dkt. No. 24 at 6 ("Parties must make a meaningful effort to confer prior to filing a dispositive motion"). Thus, the Court grants Stepien's motion for summary judgment on the issue that the suspension and removal are adverse actions. *See, e.g.*, *Lopez v. WinCo Holdings*, No. 21-16565, 2022 WL 17547804, at *2 (9th Cir. Dec. 9, 2022) (removal and suspensions are adverse actions).

2.   <u>10-Day Suspension</u>

NOAA argues that Stepien cannot establish a prima facie case of discrimination because she cannot show that similarly situated employees were treated more favorably. Dkt. No. 34 at 16. It notes that although Doe was suspended for only three days, he was not similarly situated because he "included the NOAA logo on a slide despite purporting to give the presentation in a non-governmental capacity," while Stepien (1) "us[ed] another scientist's slide against his wishes (which by itself is different than misusing the NOAA logo)" and (2) referred to Guyton as a "bad priest" and a "gang rapist." *Id.*

Stepien counters that Doe was treated better, Dkt. No. 69 at 26, and Guyton—a younger male—was not disciplined for his "abrasive emails about Stepien leaving a meeting for one pre-arranged hour," *id.* at 14. *See also* Dkt. No. 70-29 at 6 (Stepien was born in 1958 and Guyton was born in 1965).[9] NOAA does not dispute that Stepien, Guyton, and Doe held comparable scientist positions, or that Doe and Guyton were younger men. *See generally* Dkt. Nos. 34, 74. But "[i]t is

---

[9] Stepien never identifies Doe's age and her declaration is opaque on that issue, stating that she "recall[s] him being approximately sixty years old" without tying that recollection to any particular year. Dkt. No. 71 at 18.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY - 25

not enough for employees to be in similar employment positions; rather, the plaintiff and the comparator employee must be similarly situated in all material respects." *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019) (cleaned up). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. The plaintiff and comparators do not display similar conduct if they were "not involved in the same type of offense[.]" *Id.*; *see also Mitchell v. Sup. Ct. of Cal. Cnty. of San Mateo*, 312 F. App'x 893, 894 n.1 (9th Cir. 2009). Likewise, the plaintiff and comparators do not display similar conduct if they were not involved in the same combination of offenses. *See Ingram v. Pac. Gas & Elec. Co.*, 690 F. App'x 527, 530 (9th Cir. 2017) ("Though Ingram can identify individuals with a relatively similar history of switching errors or with a relatively similar history of driving violations, he is unable to identify an individual who shares the combination of his switching errors and driving violations."). Although the issue of "whether two employees are similarly situated is ordinarily a question of fact," *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (citation omitted), the issue can be resolved on summary judgment absent a disputed issue of material fact, *Morris v. Mayorkas*, No. CV20-1174-MWF (RAOx), 2021 WL 3579361 at *5 (C.D. Cal. June 29, 2021) (finding at summary judgment that plaintiff failed to show that employees were proper comparators), *aff'd sub nom. Morris v. Wolf*, No. 21-55860, 2023 WL 7034508 (9th Cir. Oct. 26, 2023). *See also Beeman v. Mayorkas*, No. 21-235-MJP, 2022 WL 4120150, at *5–6 (W.D. Wash. Sept. 9, 2022) (granting summary judgment where plaintiff failed to produce evidence of similarly situated employees). Guyton did not engage in conduct similar to what led to Stepien's suspension. The "abrasive emails" Stepien points to are not equivalent to her derogatory name calling and use of a slide after being told not to do so.

Nor did Stepien and Doe engage in similar conduct or a combination of conduct. Stepien recommended that Doe be removed from his position for inappropriate conduct and providing

inaccurate information. Dkt. No. 86-1 at 2–5. Stepien was suspended for conduct unbecoming and

failure to follow instructions. Dkt. No. 35-8 at 2–4. While at first glance, "inappropriate conduct"

and "conduct unbecoming" seem linguistically similar, the conduct each employee engaged in is

not. Doe presented slides that identified his NOAA title and affiliation while he was on leave and

without permission from NOAA. Dkt. No. 86-1 at 2–3. In contrast, Stepien repeatedly disparaged

a colleague, used a slide after being expressly told not to do so by its author, failed to follow

instructions, and deepened an existing rift with an outside entity. Dkt. No. 35-8 at 3.[10] Under these

circumstances, there is no genuine issue of material fact regarding whether Doe and Stepien were

similarly situated. And because they were not similarly situated, NOAA is entitled to summary

judgment on this claim. *See, e.g.*, *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028

(9th Cir. 2006) (noting that "if a reasonable jury could not find liability, then summary judgment

was correct.").

Even if Doe were a proper comparator and Stepien had established a prima facie case,

NOAA had legitimate reasons to suspend Stepien based on her inappropriate emails and use of

another scientist's slide without permission. Dkt. No. 34 at 17. "Unprofessional

emails . . . constitute a legitimate, nondiscriminatory reason for an adverse employment action."

*Edgell v. Regan*, No. 2:22-cv-00045-JHC, 2023 WL 8702058, at *9 (W.D. Wash. Dec. 15, 2023)

(citing *Klamrzynski v. Maricopa Cnty. Cmty. Coll. Dist.*, No. 22-16752, 2023 WL 6139567, at *1

(9th Cir. Sep. 20, 2023)). And Stepien has no evidence of pretext; she admits that she sent the

offensive emails and used the slide despite being told not to do so. Dkt. No. 35-21 at 10, 12–13,

15. She does not dispute that use of the slide damaged NOAA's relationship with a third party. *See*

---

[10] Notably, Matlock testified during his deposition that Doe's use of his title, use of the NOAA logo, and failure to
obtain NOAA's approval to travel to the conference while on leave were not necessarily improper, and Matlock did
not find that Doe had committed all of the misconduct Stepien alleged. Dkt. No. 84-1 at 9, 11–12, 21–22; *see also
Morris*, 2021 WL 3579361 at *5 (rejecting argument that plaintiff and comparators were not disciplined for engaging
in similar conduct in part because the comparator's conduct "arguably fell within permissible conduct").

*generally* Dkt. No. 69. Stepien argues that the "suspension is false" because her use of the slide was an "inadvertent mistake[.]" *Id.* at 22. However, her trivialization of the incident does not support her claim that the allegation against her was "false." *Id.*; *see, e.g.*, *Cornwell*, 439 F.3d at 1028 n.6 (explaining that a plaintiff does not "create a genuine issue of material fact by relying solely on [her] subjective belief that the challenged employment action was unnecessary or unwarranted"). Although Stepien notes that she received good performance reviews during her years at NOAA, Dkt. No. 69 at 23, she does not dispute NOAA's assertion that her suspension was based on her conduct, not her performance, Dkt. No. 35-24 at 6. And finally, Stepien's claim of age discrimination is further undermined by her concession in her deposition that she had no evidence that Matlock, the decision maker, took her age into account in deciding to suspend her. Dkt. No. 35-21 at 21 ("Dr. Matlock's about 10 years older than me, so I don't think age was a factor to him.").

The Court finds that Stepien has not raised a genuine issue of material fact regarding whether her suspension constituted age or sex discrimination and NOAA is entitled to summary judgment on this claim.

3. <u>Administrative Leave</u>

NOAA notes that "[c]ourts in this Circuit have taken differing views on whether paid, administrative leave constitutes an adverse action for Title VII purposes[.]" Dkt. No. 34 at 18 (citing *Franks v. City of Santa Ana*, No. SACV 15-108-JVS (DFMx), 2015 WL 13919157, at *4 (C.D. Cal. Apr. 27, 2015)); *see also Bradley v. Swedish Health Servs.*, No. C22-0581-TSZ, 2023 WL 8879121, at *5 (W.D. Wash. Dec. 22, 2023) (finding that plaintiff did not suffer an adverse action from being placed on paid leave and returned to the same position); *Parker v. Arizona*, No. CV08-656-TUC-AWT, 2013 WL 3286414, at *9 n.4 (D. Ariz. June 28, 2013) ("Although it is debatable whether paid administrative leave would always represent adverse action," because

1    "Plaintiff was required to remain in her residence during each work day while on leave, there is no

2    doubt that this was the type of change in work schedule that constitutes adverse action under Ninth

3    Circuit precedent." (cleaned up)). Here, although Stepien's leave was paid, it was lengthy, and she

4    was prohibited from entering NOAA premises without McClure's permission, contacting certain

5    colleagues, and performing most of her work. Dkt. No. 35-11 at 2; Dkt. No. 52-13 at 2; *see also*

6    *Muldrow*, 2024 WL 1642826, at *7. Therefore, there is an issue of fact regarding whether her

7    administrative leave was an adverse action.[11]

8           NOAA argues that even if the leave constituted an adverse action, Stepien has provided no

9    evidence that similarly situated employees were treated better than she was. Dkt. No. 34 at 18.

10   According to NOAA, "no one [else] acted as egregiously towards so many people," no one else

11   harmed the agency's relationship with a third-party, and JISAO did not raise concerns about any

12   other NOAA employee. *Id.* at 18–19. Stepien counters that Guyton was not placed on leave—and

13   in fact remained her supervisor—even after Stepien emailed McClure in May 2019 "detailing the

14   prolonged harassment she endured from Guyton." Dkt. No. 69 at 27 (citing Dkt. No. 52-4 at 2,

15   which alleged "2.5 years" of "harassment, gender, and age discrimination by Guyton" against

16   Stepien). NOAA does not dispute that Stepien and Guyton held similar positions and were both

17   supervisors. Stepien has also presented evidence that Guyton engaged in conduct similar to the

18   conduct that landed her on leave: Stepien was alleged to have mistreated others, and Guyton was

19   alleged (by Stepien) to have harassed her and retaliated against her. Dkt. No. 52-4 at 2; Dkt. No.

20   52-7 at 2 (Stepien writing to Matlock in July 2019 that the harassment, discrimination, and

---

[11] The parties do not address whether placement on administrative leave is a "personnel action" under the ADEA. The term is broadly defined to include "any other significant change in duties, responsibilities, or working conditions," 5 U.S.C. § 2302(a)(2)(A)(xii), which the Court finds can include administrative leave to the extent the leave results in such significant change. Here, the Court assumes without deciding that Stepien's leave did constitute a personnel action.

retaliation were continuing "and ha[d] gotten worse"). Although this case raises concerns regarding a plaintiff manufacturing comparators, viewing the facts in the light most favorable to Stepien, there is an issue of fact regarding whether the two were similarly situated, and the fact that Stepien was placed on leave while Guyton was not suffices for her prima facie case. *Parker*, 2013 WL 3286414, at *9.

NOAA further argues that it has produced a legitimate non-discriminatory reason for the leave: McClure "decided that Stepien should not contact employees out of concern that Stepien might retaliate against them for participating in that investigation." Dkt. No. 34 at 19–20. Even if the concerns others raised about Stepien were false, NOAA management "had a legitimate and honest reason to be concerned." Dkt. No. 34 at 20.

However, Stepien has provided some evidence of pretext. A showing that a defendant "treated similarly situated employees outside [the plaintiff's] protected class more favorably [is] probative of pretext." *Vasquez*, 349 F.3d at 641; *see Hawn*, 615 F.3d at 1158 (noting that comparison to similarly situated employees "may be relevant both to plaintiffs' prima facie case and proof of pretext"). Thus, NOAA's arguably different treatment of Guyton and Stepien is relevant here too. No pretext is shown if one employee's misconduct "prompted complaints or consternation by other employees" while the other employee's misconduct did not. *Hawn*, 615 F.3d at 1160. But here, Stepien complained about Guyton's conduct. *See, e.g.*, Dkt. No. 35-6 at 2. And even if NOAA's investigations ultimately did not substantiate Stepien's complaints about Guyton, *see* Dkt. No. 32 at 3, he was not suspended pending the outcome of the investigation, while Stepien was.

Stepien also argues that pretext is shown by NOAA's extension of her leave without the approval of the chief financial officer, in violation of NOAA policy. Dkt. No. 69 at 24; Dkt. No.

70-2 at 3 (the policy).[12] "A plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011); *see also Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1214 (9th Cir. 2008) (holding that reasonable jurors could conclude that deviating from company policy "undermines the credibility of the proffered explanations"); *Karthauser v. Colum. 9-1-1 Commc'ns Dist.*, 647 F. Supp. 3d 992, 1010 (D. Or. 2022) ("An employer's disregard for its own company policies, or failure to follow its normal practices, is evidence of pretext."). NOAA does not dispute Stepien's characterization of the policy, but argues that Stepien was still allowed "to work on select projects that would not bring her into contact with the laboratory members that would be interviewed as part of the investigation." Dkt. No. 74 at 8. Regardless of how much she was allowed to do during her leave, Stepien was officially on administrative leave, and that leave was extended without complying with policy. Dkt. No. 35-11 at 2; Dkt. No. 52-13 at 2.

Under these circumstances, Stepien has presented evidence sufficient to raise a genuine issue of material fact as to whether her leave was discriminatory, precluding summary judgment on this claim.

---

[12] Stepien cites to "Exhibit GG" of her counsel's declaration, which she identifies as the deposition transcript of a NOAA employee named "Turcotte," Dkt. No. 69 at 24, but there is no Exhibit GG or Turcotte deposition transcript attached to that declaration. Her counsel's declaration states that the deposition transcript is at Exhibit BB, Dkt. No. 70 at 5, but there is no exhibit BB attached to his declaration. There is also no Exhibit EE in the record despite the reference to one. Dkt. No. 69 at 27. This lack of care is reflective of numerous deficiencies in the exhibits Stepien submitted, including some that lack marked divider pages as required by Local Civil Rule 10(e)(10). *See* Dkt. Nos. 70-1, 70-16, 70-20, 70-21, 70-28. Stepien also filed scores of exhibits without identifying them as "Exhibit A" etc. in the docket, making it difficult and time consuming to locate the referenced exhibits. *See generally* Dkt. No. 70. NOAA attempts to help the Court through this morass and notes the location of some of the miscited exhibits. Dkt. No. 63 at 5 at n.1. Any further inaccurate citations in Stepien's filings may result in the Court striking those filings and/or imposing sanctions.

1          4.  <u>Termination</u>

2          NOAA argues that Stepien has no evidence that similarly situated people committed the

3   conduct that led to her removal and were allowed to keep their jobs. Dkt. No. 34 at 21. It further

4   argues that "Stepien's mistreatment of other lab members and her failure to follow instructions are

5   legitimate, nondiscriminatory and non-retaliatory bases to remove someone, especially a

6   manager." *Id.* It also contends that Stepien has no evidence of pretext. *Id.* at 22. NOAA does not

7   dispute that Stepien was replaced by Shambaugh, a substantially younger male. Dkt. No. 70-29 at

8   5 (Shambaugh was born in 1969); *see France*, 795 F.3d at 1174 (holding that "an average age

9   difference of ten years or more between the plaintiff and the replacements will be presumptively

10  substantial, whereas an age difference of less than ten years will be presumptively insubstantial").

11         Mistreating subordinates is a legitimate, non-discriminatory reason for termination.

12  *Karthauser*, 647 F. Supp. 3d at 1009. Although Stepien disputes that she mistreated anyone, she

13  cannot defeat NOAA's reason simply by disagreeing or even by showing that the reason was false.

14  What matters is not whether the decision maker based the termination decision on an "*objectively*

15  *false*" reason, but whether the decision maker "honestly believed" the reasons given for the

16  termination of employment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir.

17  2002) (citation omitted). Here, McClure and Matlock honestly believed that Stepien had engaged

18  in the misconduct alleged based on the extensive and independent investigation. Dkt. No. 35-17 at

19  9; Dkt. Nos. 35-14, 35-15. The burden thus shifts to Stepien to show pretext.

20         Although replacement by a younger person alone is insufficient to demonstrate pretext for

21  an age discrimination claim, *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003),

22  Stepien also contends that Shambaugh was selected to replace her even though he lacked a Ph.D.,

23  "which was an original requirement of the job Stepien occupied," Dkt. No. 69 at 22; *see also* Dkt.

24  No. 71 at 17 (stating that when she was hired, the "job description as Ocean Research Division

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY
- 32

Leader required a Ph.D. degree in Oceanography (or equivalent field), which Shambaugh lacks"). Although a plaintiff's burden is higher to show pretext than to prove a prima facie case, a plaintiff "may rely on the same evidence they used to establish a prima facie case or put forth additional evidence." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000). Stepien can therefore rely on this discrepancy and the fact that she was replaced with an arguably less credentialed younger man in both the prima facie case and pretext stages.[13]

Here, Stepien has raised an issue of fact regarding pretext and whether "circumstances surrounding the adverse employment action give rise to an inference of discrimination" even in the absence of a comparator for this claim. *Fonseca*, 374 F.3d at 847. Stepien also argues that pretext is shown because the notice of termination relied in part on Stepien's prior LOR in violation of NOAA's policies or practices. Dkt. No. 69 at 24. The LOR, issued on December 13, 2018, stated that it would remain in her personnel folder for two years and "may be considered in any subsequent disciplinary action during this reckoning period." Dkt. No. 35-3 at 3. However, more than two years later, the March 31, 2021 decision on notice of proposed removal referenced the LOR twice in its discussion of the appropriate penalty. Dkt. No. 35-15 at 3–4. NOAA responds that Stepien's suspension letter also referenced the LOR, was based on the same conduct, and was part of her permanent record. Dkt. No. 74 at 7; Dkt. No. 35-8 at 3 (August 2019 suspension letter noting that Stepien received the LOR for her inappropriate "gang rapist" email and had subsequently sent another inappropriate email, raising Matlock's concern that she was "engaging in misconduct that seem[ed] to be developing [into] a pattern and [wa]s repeating"). However, the

---

[13] NOAA argues in its reply that "Matlock, McClure, and Guyton played no role in deciding to hire . . . Shambaugh to that position permanently[.]" Dkt. No. 74 at 8. Although the declaration cited in support of this argument states that those individuals had no roles "in the screening and/or interviewing of candidates," it does not state that they played no role in the hiring decision. Dkt. No. 76 at 2. And NOAA does not disavow their participation in the decision to place Shambaugh into the acting division director position from Stepien's removal in 2021 until he officially assumed the position of OERD director on June 4, 2023, even though he lacked the Ph.D. Stepien was required to have. *Id.* at 1–2.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY - 33

1    fact that the 2019 suspension notice referenced the LOR within the two-year window does not

2    explain why the 2021 termination notice referenced it outside that window. To be sure, "such a

3    deviation [from policy] must be considered in context and may not always be sufficient to infer a

4    discriminatory motive." *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1149 (9th Cir. 2017).

5    But here, the context is limited and the record contains no explanation of why Matlock considered

6    the LOR despite its staleness and does not indicate that he would have reached the same conclusion

7    on the appropriate penalty had he disregarded the LOR. Nor can the Court assume that reference

8    to untimely LORs was the norm when Matlock's suspension letter to Doe did not reference Doe's

9    prior receipt of an LOR, even though the circumstances underlying his LOR and suspension both

10   arguably reflected dishonesty. Dkt. No. 69 at 26–27; *see generally* Dkt. No. 86-2.

11        The Court emphasizes that Stepien's evidence of pretext is nearly eclipsed by the extensive

12   evidence of her misconduct, but it is nevertheless specific and substantial enough to carry her

13   burden at this stage. Accordingly, the Court finds that Stepien has raised a genuine issue of material

14   fact regarding whether her termination was the product of age or sex discrimination.

15   **D.    Retaliation**

16        To establish a prima facie claim of retaliation under Title VII or the ADEA, a plaintiff must

17   prove that "(1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse

18   employment action, and (3) there was a causal link between the plaintiff's protected activity and

19   the adverse employment action." *Poland v. Chertoff*, 494 F.3d 1174, 1179–80 & n.1 (9th Cir.

20   2007). Once a plaintiff has made the threshold prima facie showing, the defendant must articulate

21   a legitimate, non-retaliatory reason for the challenged action. *Reynaga v. Roseburg Forest Prods.*,

22   847 F.3d 678, 693 (9th Cir. 2017). If the defendant does so, the plaintiff "has the ultimate burden

23   of showing that [the defendant's] proffered reasons are pretextual." *Id.* (citation omitted).

24

1    NOAA moves for summary judgment on Stepien's retaliation claims. Dkt. No. 34 at 2, 14–

2  22. Stepien moves for partial summary judgment on the scope of her protected activities under

3  Title VII and the adverse actions she claims to have suffered as a result. *See generally* Dkt. No.

4  51. NOAA opposes the motion in part as set forth below. Dkt. No. 63. In addition, NOAA correctly

5  points out that because Stepien bears the burden of proof at trial to demonstrate that she engaged

6  in protected activity and suffered adverse actions, she "must come forward with evidence which

7  would entitle [her] to a directed verdict if the evidence went uncontroverted at trial." *Id.* at 2–3

8  (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)); *see also* Ninth Cir. Model Civ.

9  Jury Instr. § 10.8 (2022 ed.); *cf. Edwards v. Princess Cruise Lines, Ltd.*, 371 Fed. App'x 768, 769

10  (9th Cir. 2010).

11    1.  Scope of Protected Activity

12    Stepien requests that the Court rule that she participated in protected activities pursuant to

13  Title VII because there is undisputed evidence that she "directly opposed discrimination to her

14  management staff and filed several Equal Employment Opportunity (EEO) complaints[.]" Dkt.

15  No. 51 at 3; *see also id.* at 7–10.[14]

16    Employees have engaged in protected activity if they (1) "opposed any practice made an

17  unlawful employment practice by [Title VII]," or (2) "made a charge, testified, assisted, or

18  participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42

19  U.S.C. § 2000e–3(a); *see also Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). To

20  constitute protected opposition activity, "[i]t is not necessary . . . that the employment practice

21  actually be unlawful; opposition clause protection will be accorded whenever the opposition is

22

23
24  [14] Stepien alleged an ADEA retaliation claim in her second amended complaint, Dkt. No. 28 at 25–26, but her request
     for summary judgment that she participated in protected activity is limited to her Title VII claim, Dkt. No. 51 at 3, 7–
     10.

based on a reasonable belief that the employer has engaged in an unlawful employment practice." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (cleaned up).

Stepien alleges that the following were protected activities:

- Stepien's October 25, 2018 email to Matlock complaining of "horrible discrimination";[15]

- Stepien's May 26, 2019 email to McClure complaining of "2.5 years" of harassment and discrimination by Guyton, Dkt. No. 35-6 at 2;

- Stepien's July 1, 2019 formal complaint of discrimination;[16]

- Stepien's July 2019 appeal of her proposed suspension complaining of continuing harassment, retaliation, and discrimination, Dkt. No. 52-7;

- Stepien's September 2, 2019 contact to the EEO office adding allegations that her suspension was discriminatory;[17]

- Stepien's May 18, 2020 email to McClure contending that the administrative leave was in retaliation for her EEOC complaint, Dkt. No. 52-10 at 2;

- Stepien's June 22, 2020 formal EEO complaint regarding being placed on administrative leave, Dkt. No. 52-19 at 4–7;

- Stepien's February 5, 2021 rebuttal to her proposed removal, Dkt. No. 52-15.

Dkt. No. 51 at 8–10. NOAA does not dispute that Stepien engaged in protected activity when she

---

[15] Stepien's motion cites to her declaration at Exhibit 7, Dkt. No. 51 at 9, but her Exhibit 7 is not an October 25, 2018 email, Dkt. No. 52-7. Stepien might be referring to her October 26, 2018 email, Dkt. No. 52-2, though as with many of her other exhibits, Stepien did not bother to highlight the relevant part of the exhibit as required by Local Civil Rule 10(e)(10).

[16] Here again, Stepien includes an incorrect citation to the record. Stepien's motion cites to her declaration at Exhibit 9, Dkt. No. 51 at 9, but her Exhibit 9 is not her EEO complaint, Dkt. No. 52-9. She might be referring to docket entry 52-5.

[17] Stepien cites to "Lim Decl. at Ex. 9," Dkt. No. 51 at 10, but there is no such document attached to Lim's declaration. The document is actually attached to a different declaration. Dkt. No. 52-20.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY - 36

filed her EEO complaints. Dkt. No. 63 at 3. The Court agrees that "initiation and subsequent formal filing of an EEO complaint for discrimination and retaliation is a protected activity." *Edgell*, 2023 WL 8702058, at \*14. The Court therefore grants summary judgment to Stepien on her claim that her formal EEO complaints and emails to the EEO office updating her claims were protected activity under Title VII.

NOAA disputes that Stepien is entitled to summary judgment that her other actions constituted protected activity. Dkt. No. 63 at 3–6. NOAA notes that Stepien's motion does no more than list those activities and state in a conclusory fashion that they constituted protected activity, without explaining why she had a good faith belief that each instance constituted protected activity. *Id.* at 4 ("Simply listing statements is not enough."). Stepien suggests that complaints mentioning discrimination are protected activity as a matter of law, Dkt. No. 80 at 2, but that assertion is an inaccurate oversimplification, *Morgan v. Buttigieg*, No. 21-15979, 2022 WL 1566976, at \*1 (9th Cir. 2022) (explaining that where "a plaintiff claims he engaged in protected opposition, the plaintiff must demonstrate a reasonable belief that the employer has engaged in an unlawful employment practice," and finding that the district court "was well within its discretion to conclude that [plaintiff] could not reasonably and in good faith have believed that his coworker's isolated comment was discriminatory, let alone an unlawful employment practice under Title VII." (cleaned up)).

The Court agrees with NOAA that Stepien's motion—and her later filed reply that only pointed back to her motion for partial summary judgment and to her non-existent motion for summary judgment—does not identify any facts or explain why her emails and appeals were based on a "reasonable belief" that she had suffered discrimination, retaliation, or harassment. *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983); *see* Dkt. No. 80 at 2–3. NOAA also casts doubt on whether Stepien's belief was reasonable in all of her complaints, noting that

Stepien "would make general statements about discrimination or retaliation but not stand by them, attribute the issues to causes unrelated to discrimination or retaliation, or not make statements in good faith." Dkt. No. 63 at 4; Dkt. No. 39 at 4 (Sabine stating that Stepien "would also make general statements to others, not [Sabine], about discrimination against her from certain members of the lab," and stating that Sabine "talked to her several times about it," explaining "that there was an HR process for reporting discrimination if she was being sincere," but "[e]very time, [Stepien] backed down and told [Sabine] there wasn't any issue"); Dkt. No. 41 at 3 (Lee stating that Stepien wanted her to tell McClure that Guyton "was racist and make him sound very bad, but [Lee] didn't think this was true"). In light of those issues, the Court cannot conclude as a matter of law that all of Stepien's emails, appeals, and rebuttals in the above list reflected a reasonable belief that NOAA had engaged in unlawful employment practices, and therefore she is only entitled to summary judgment that her complaints to the EEO office were protected activities.

## 2. Actionable Adverse Actions

Plaintiffs can challenge allegedly retaliatory actions by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Reynaga*, 847 F.3d at 693 ("[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." (citation omitted)); *see also Poland*, 494 F.3d at 1180 (applying the same standard to an ADEA claim).

To support her retaliation claim, Stepien contends that she was subjected to the following adverse actions:

- July 2, 2019 proposed suspension;

- August 9, 2019 final suspension;

- May 18, 2020 placement on administrative leave;

- January 22, 2021 proposed termination; and

- March 31, 2021 final termination.

Dkt. No. 51 at 11. Again, NOAA does not contest that the suspension and removal were adverse actions, Dkt. No. 63 at 1, and the Court grants Stepien summary judgment on that issue with respect to her retaliation claims too.

NOAA contends, however, that the administrative leave was not an adverse action because Stepien was paid and allowed to work on time sensitive matters. Dkt. No. 63 at 7–8. As set forth above, the Court has found that there is an issue of fact regarding whether the leave was an adverse action for purposes of Stepien's discrimination claim, and the same is true for her retaliation claim. *Bradley*, 2023 WL 8879121, at *7 (finding an issue of fact regarding whether placement on paid administrative leave "would have deterred a reasonable employee from engaging in protected activity" for purposes of a retaliation claim).

Stepien also argues that the proposed suspension and proposed removal are adverse actions. Dkt. No. 80 at 4. NOAA counters that they were not because they could be—and were—challenged on appeal. Dkt. No. 63 at 7. The proposed suspension stated that Stepien had the right to reply (with counsel) and that the deciding official (Matlock) "will give full consideration to any reply, affidavits and other evidence [Stepien] present[ed] before making a final decision." Dkt. No. 35-2 at 6–7. The proposed removal included the same information notifying Stepien that it was not final. Dkt. No. 35-14 at 10.

The Court finds that under these circumstances, there is a question of fact regarding whether Stepien suffered an adverse action as a result of the proposed suspension or proposed removal. *See, e.g.*, *Williams v. McDonough*, No. 20-10074-SPG, 2022 WL 18214015, at *17 (C.D.

Cal. Nov. 7, 2022) (surveying Ninth Circuit case law regarding whether a proposed removal constitutes an adverse employment action); *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (holding in the context of a negative employment evaluation that "[b]ecause the evaluation could well have been changed on appeal, it was not sufficiently final to constitute an adverse employment action"); *but see Campbell*, 892 F.3d at 1021 (holding post-*Brooks* that an action is adverse if "a reasonable employee would have found the challenged action materially adverse"); *Edgell*, 2023 WL 8702058, at *7 (finding an issue of fact regarding whether proposed actions constituted adverse employment actions).

Accordingly, the Court denies Stepien's motion for summary judgment that the proposed actions and the administrative leave constituted adverse actions and grants her motion that her removal and suspension were adverse actions for purposes of her retaliation claim.

### 3. 10-Day Suspension

NOAA argues that Stepien cannot establish a causal link between her protected activity and her suspension because Stepien engaged in misconduct and employees cannot insulate themselves from discipline by complaining. Dkt. No. 34 at 16–17. And during her deposition, "Stepien made vague assertions that Matlock was trying to eliminate her job and cause irreparable harm to her career, but nothing about her protected activity." *Id.* at 17 (citing Dkt. No. 35-21 at 16–20). But during that questioning, Stepien also referenced her protected activity as a reason for the suspension and contended that Matlock "went against [her] protected activity." Dkt. No. 35-21 at 17, 19.

Stepien argues that temporal proximity supports her retaliation claim: her May 2019 email expressing a desire to file a formal complaint of discrimination and her July 1, 2019 formal complaint were quickly followed by a July 1, 2019 proposed letter of suspension and an August 5, 2019 final suspension. Dkt. No. 69 at 30; *see also* Dkt. No. 71 at 9, 11; Dkt. No. 52-5 at 2

(complaint); Dkt. No. 35-2 at 2–7 (proposed suspension); Dkt. No. 35-8 at 2–4 (final suspension). The close temporal proximity between Stepien's complaints and the proposed and final suspension is sufficient to support a prima facie showing of causal connection. *See, e.g.*, *Santillan v. USA Waste of Cal., Inc.*, 853 F.3d 1035, 1047 (9th Cir. 2017) ("The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." (quotation marks and citation omitted)); *Garcia v. City of Everett*, 728 F. App'x 624, 628 (9th Cir. 2018) ("Courts have held 'very close' temporal proximity to mean that 1.5 months is sufficient whereas three and four months is too long."); *see also Samson v. Wells Fargo Bank, N.A.*, 777 F. App'x 881, 883–84 (9th Cir. 2019).

As set forth above, NOAA had a legitimate reason for the suspension given Stepien's misuse of the slide and derogatory name calling. A complaint of discrimination does not grant an employee a free pass to engage in misconduct or insulate them from discipline for that misconduct. *Buhl v. Abbott Labs.*, 817 F. App'x 408, 411 (9th Cir. 2020); *see also Rhine v. Buttigieg*, No. 2:20-cv-01761-RAJ-BAT, 2022 WL 18673225, at *12 (W.D. Wash. Nov. 22, 2022), *report and recommendation adopted*, 2023 WL 1928089 (W.D. Wash. Feb. 10, 2023); *see Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985) ("An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals."). The burden therefore shifts to Stepien to show that NOAA's proffered reasons are pretextual.

The Court finds that Stepien has raised a genuine issue of material fact regarding whether McClure was motivated by retaliatory animus in proposing the suspension. Close timing can "support an inference of retaliatory motive[.]" *Villiarimo*, 281 F.3d at 1065 (citation omitted). Here, the timing was immediate between Stepien's July 1, 2019 formal complaint and the July 1, 2019 proposed letter of suspension. Even if by itself "temporal proximity is insufficient to show

pretext," *Klamrzynski*, 2023 WL 6139567, at *1, Stepien offers more: she argues that direct evidence supports her suspension-related claim because the suspension notice "states [that] writing an email mentioning the words 'harassment' and 'gender' is 'conduct unbecoming.'" Dkt. No. 69 at 30. NOAA argues that the notice was instead limited to the bad priest comment. Dkt. No. 74 at 11. The truth lies in between the parties' characterization: the proposed suspension does not explicitly state that Stepien's harassment and discrimination complaints were inappropriate or conduct unbecoming, but it does include them in email excerpts that it characterizes as examples of "comments" that "were inappropriate and demonstrate[d] conduct unbecoming." Dkt. No. 35-2 at 4. Even if that evidence is not direct evidence of discriminatory animus as NOAA contends, when combined with the close temporal proximity, it is sufficient to raise a genuine issue of material fact regarding whether the proposed suspension was motivated by retaliation.[18]

However, Stepien has not demonstrated any evidence of pretext regarding the final suspension. Stepien does not argue that Matlock, who issued the suspension, failed to make an independent decision or was influenced by McClure's proposed suspension. *Cf. Acosta v. Brain*, 910 F.3d 502, 514–15 (9th Cir. 2018); *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011) (holding that a "supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified"). And unlike the proposed suspension notice, the final suspension notice referenced Stepien's harassment complaint only to note that Matlock was referring it to the appropriate team per agency process. Dkt. No. 35-8 at 2. Although that notice also referenced Stepien calling Guyton a "gang rapist" and a "bad priest," *id.* at 3, Stepien has

---

[18] "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (cleaned up). Such evidence "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan*, 413 F.3d at 1095. "Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination." *Id.*

1   never contended that Guyton was literally either of those things or shown that referring to a

2   colleague by untrue and derogatory names is protected activity. Therefore, NOAA is entitled to

3   summary judgment regarding Stepien's claim that the final suspension decision was retaliatory,

4   but is not entitled to summary judgment on her claim that the proposed suspension was retaliatory.

5          4.   Administrative Leave

6          NOAA argues that Stepien cannot demonstrate that her placement on administrative leave

7   was retaliatory because there was no temporal proximity between her protected activity and her

8   May 2020 placement on leave. Dkt. No. 34 at 19 (noting that "Stepien's last protected activity was

9   ten months earlier when she filed the EEO complaint about Guyton," and citing to *Manatt v. Bank

10  of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) for the position that a nine-month gap between

11  date of complaint and adverse action does not imply causation).

12         Stepien counters that her placement on leave in May 2020 was close in time to her

13  December 2019 EEO complaint about her suspension, and to McClure's "participating in said

14  investigation in April or May of 2020[.]" Dkt. No. 69 at 30. In reply, NOAA acknowledges that

15  "temporal proximity between the protected activity and the adverse action may create an inference

16  of causality," but argues that the assumption underlying that inference—i.e., that protected

17  activities and adverse actions are both relatively infrequent—holds no force where, as here, an

18  employee "systematically engages in protected activity," making any adverse action temporally

19  proximate to a recent protected activity. Dkt. No. 74 at 10 (quoting *Dilettoso v. Potter*, No. CV04-

20  0566-PHX-NVW, 2006 WL 197146, at *13 (D. Ariz. Jan. 25, 2006)).

21         Even if Stepien's frequent complaints undermine her temporal proximity argument,

22  Stepien has more than just temporal proximity to support her leave-related retaliation claim. A

23  reasonable juror could conclude that McClure, who decided to place Stepien on leave and extend

24  that leave, harbored retaliatory animus, which was reflected by (1) her failure to follow policy

1    when extending Stepien's leave, and (2) her reference to Stepien's harassment and gender

2    complaints in the "bad priest" email as examples of "comments" that "were inappropriate and

3    demonstrate[d] conduct unbecoming." Dkt. No. 35-2 at 4. There is thus an issue of fact regarding

4    whether Stepien's placement on administrative leave was retaliatory, and NOAA is not entitled to

5    summary judgment on this claim.

6        5.   Proposed and Final Termination

7        NOAA relies on the same arguments it advanced with respect to Stepien's discrimination

8    claim to contend that her termination was not retaliatory. Dkt. No. 34 at 21–22. Stepien does the

9    same and "proffers all of the indirect evidence of discrimination . . . to support her retaliation

10   claim," plus the fact that McClure proposed her termination "[w]hile [she] was put on paid admin

11   leave, and still had all her EEO complaints active[.]" Dkt. No. 69 at 30.

12       As set forth above, there is an issue of fact regarding whether Stepien's proposed removal

13   was an adverse action. And the Court has found that there is also an issue of fact regarding whether

14   McClure harbored retaliatory animus as demonstrated by her reference to Stepien's harassment

15   complaints in the notice of proposed suspension and her continuation of Stepien's leave in June

16   2020 without following policy. In addition, McClure informed CI employees that Stepien had been

17   proposed for removal before Matlock made a final decision, even though she knew that "one

18   should not" discuss personnel actions, especially proposed ones, with non-federal employees. Dkt.

19   No. 70-20 at 18–20, 22; *see also* Dkt. No. 52-16 at 2 (February 15, 2021 email from a CI employee

20   to McClure starting with, "[n]ow that Carol has been officially let go"); Dkt. No. 35-15 (Matlock's

21   March 31, 2021 decision to remove Stepien). A reasonable jury could find that the improper

22   disclosure and premature characterization of the proposed removal as final, combined with the

23   other issues discussed above, reflected a retaliatory animus that "more likely motivated" the

24   proposed removal. *Chuang*, 225 F.3d at 1124.

1    In addition, McClure's premature notification to others that Stepien had been let go—

2    before Matlock issued his decision—creates an issue of fact regarding whether the final removal

3    decision was pretextual as Stepien contends. Dkt. No. 69 at 18, 24. The same is true regarding

4    Matlock's unexplained departure from policy by relying on the LOR outside the two-year window.

5    Viewing the evidence in the light most favorable to Stepien, the Court finds that there is an issue

6    of fact precluding summary judgment on Stepien's termination-related retaliation claim.

7    Finally, Stepien did not respond to NOAA's argument that if any of Stepien's ADEA

8    claims survive, she is not entitled to compensatory damages under the ADEA. Dkt. No. 34 at 27;

9    *see generally* Dkt. No. 69. NOAA is correct that compensatory damages are not available under

10   the ADEA, so its motion for summary judgment is granted on this point. *Ahlmeyer v. Nev. Sys. of*

11   *Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009).

12   **E.    Hostile Work Environment**

13   Stepien contends that she was subjected to a hostile work environment based on her sex

14   and age and in retaliation for her complaints of discrimination. Dkt. No. 69 at 31–32. NOAA argues

15   that Stepien's hostile work environment claim is untimely because she does not identify any

16   harassing acts occurring after April 12, 2019, the relevant time period as set forth above. Dkt. No.

17   34 at 22–27. It further argues that even if her claim is timely, it fails on the merits. *Id.* at 24–27.

18   The Court first notes the distinction for timeliness purposes between discrete employment

19   actions—such as Stepien's suspension and removal—and allegedly harassing acts: "discrete

20   discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

21   timely filed charges," while "a hostile work environment claim . . . will not be time barred so long

22   as all acts which constitute the claim are part of the same unlawful employment practice and at

23   least one act falls within the time period." *Morgan*, 536 U.S. at 113, 122. "Provided that an act

24   contributing to the claim occurs within the filing period, the entire time period of the hostile

environment may be considered by a court for the purposes of determining liability." *Id.* at 117. When determining whether a series of events occurring both before and after the 45-day limitations period constitutes a single unlawful employment practice, courts consider whether the events "were 'sufficiently severe or pervasive,' and whether the earlier and later events amounted to 'the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers.'" *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (quoting *Morgan*, 536. U.S. at 116, 120); *see also Caldwell v. Boeing Co.*, No. C17-1741-JLR, 2019 WL 1556246, at *11 (W.D. Wash. Apr. 10, 2019). If, however, the timely act "had no relation" to the prior acts, "or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the [latter] act." *Morgan*, 536 U.S. at 122.

Here, NOAA does not argue that earlier allegedly harassing acts were unrelated to later ones, and Stepien contends that Guyton was the perpetrator throughout. In addition, Stepien alleges some timely harassing acts: Guyton sent her a May 9, 2019 email "chastising" her for not attending part of a two-day conference, and on May 30, 2019, he asked her to sign a blank performance plan to "trick" her. Dkt. No. 69 at 10, 12; Dkt. No. 71 at 8, 10–11. Therefore, Stepien's hostile work environment claim is timely and the Court turns to its merits.

To prevail on a hostile work environment claim based on a protected characteristic, plaintiffs must prove that (1) they were subjected to verbal or physical conduct because of a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was so severe or pervasive as to alter the conditions of employment and create an abusive environment. *See Manatt*, 339 F.3d at 798. The Ninth Circuit also recognizes a claim for a retaliatory hostile work environment. *See, e.g.*, *Ray v. Henderson*, 217 F.3d 1234, 1244–45 (9th Cir. 2000). Under either theory, "[h]arassment is actionable only if it is 'sufficiently severe or pervasive to alter the

1    conditions of the victim's employment and create an abusive working environment.'" *Id.* at 1245

2    (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

3        "To determine whether conduct was sufficiently severe or pervasive to violate Title VII,

4    [courts] look at all the circumstances, including the frequency of the discriminatory conduct; its

5    severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

6    whether it unreasonably interferes with an employee's work performance." *Vasquez*, 349 F.3d at

7    642 (quotation marks and citation omitted). "In addition, the working environment must both

8    subjectively and objectively be perceived as abusive." *Id.* (cleaned up). "Thus, a plaintiff must

9    show that they perceived the work environment to be hostile and that a reasonable person in their

10   position would also perceive it as such." *Edgell*, 2023 WL 8702058, at *16.

11       NOAA contends that the actions Stepien complains about are "ordinary and reasonable

12   responses to workplace management concerns," Dkt. No. 34 at 23 (quotation marks omitted), and

13   she fails to show that the conduct was objectively offensive, *id.* at 24. NOAA also avers that

14   (1) there were legitimate reasons for all of the allegedly harassing actions, (2) no reasonable jury

15   could find that the conduct—even collectively—was so severe and pervasive as to alter the

16   conditions of her employment, and (3) there was no connection between any of the conduct and

17   her gender or age. *Id.* at 25–27.

18       Stepien argues that the same actions that support her discrimination and retaliation claims

19   support her claim for a retaliatory hostile work environment. Dkt. No. 69 at 31. However, discrete

20   acts—like discipline, placement on leave, and removal—are distinct from the type of conduct that

21   can comprise a hostile work environment claim. Thus, "[i]f the flames of an allegedly hostile

22   environment are to rise to the level of an actionable claim, they must do so based on the fuel of

23   timely non-discrete acts." *Porter*, 419 F.3d at 893; *Moore v. King Cnty. Fire Prot. Dist. No. 26*,

24   No. C05-442-JLR, 2005 WL 2898065, at *3 (W.D. Wash. Oct. 31, 2005) (explaining that "*Morgan*

1    compels the conclusion that the universe of 'discrete acts,' each of which could support a separate

2    retaliation claim, is mutually exclusive of the universe of acts that can comprise a hostile work

3    environment claim."); *Yonemoto v. Shinseki*, 3 F. Supp. 3d 827, 845 (D. Haw. 2014).[19]

4         Additional reasons support granting summary judgment to NOAA on Stepien's retaliatory

5    hostile work environment claim. She contends that McClure retaliated because Stepien called her

6    a "Queen Bee," which she describes as a "reference commonly known to describe a female

7    discriminating [against] another female[.]" Dkt. No. 69 at 31. She cites nothing in support of that

8    allegedly common meaning or McClure's allegedly resulting retaliatory animus. Stepien also notes

9    that Guyton filed an allegedly retaliatory complaint against an employee—who Stepien identifies

10   as "older" without supplying her age—when that employee "threatened to go above [their]

11   director's head" about something. *Id.*; Dkt. No. 70-6 at 4–10. Stepien provides almost no facts

12   about that incident, leaving the Court unable to draw any conclusions about it other than that it

13   fails to demonstrate retaliatory animus toward Stepien. Finally, Stepien argues that the LOR she

14   received supports her claim of a retaliatory hostile work environment. Dkt. No. 80 at 6. She

15   provides no explanation in support of that contention, and there is no evidence that the LOR was

16   retaliatory, particularly because Guyton—who is not alleged to have participated in protected

17   activity—also received an LOR for similar conduct. Dkt. No. 35-22 at 7. NOAA is entitled to

18   summary judgment on Stepien's retaliatory hostile work environment claim.

19        Stepien's hostile work environment claim based on her sex and age fares no better. Her

20   response to NOAA's motion for summary judgment on this issue consists of one descriptive

21

22   _____

     [19] Stepien also contends that a male colleague was allocated a higher travel budget in May 2019. Dkt. No. 70-8 at 3–
     4. That issue represents a discrete act, not an act of harassment. *See, e.g.*, *Richards v. City of Seattle*, No. C07-1022-
23   TSZ, 2008 WL 2570668, at *8 (W.D. Wash. June 26, 2008) (employer's reluctance to pay employee's commuting
     expenses was a discrete act). Regardless, NOAA showed that the difference was based on legitimate business reasons,
     not harassment. Dkt. No. 34 at 5–6; Dkt. No. 35-25 at 5–7. Stepien did not respond to or rebut NOAA's evidence on
24   this issue.

     ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY
     - 48

sentence: "Collectively the events in Sections III. A and B" of her response brief "can be considered evidence of a Hostile Work Environment against Dr. Stepien perpetrated by Guyton, McClure, and Matlock because Dr. Stepien was treated differently than Mr. Guyton with a continuing pattern of hostile actions." Dkt. No. 69 at 32. That conclusory sentence—and Stepien's citation in the facts section of her response brief to a lengthy and un-highlighted section of her EEO declaration, *see id.* at 4 (citing Dkt. No. 70-8 at 2–6)—are insufficient to demonstrate an issue of fact, *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that the district court is not required to "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found"); LCR 10(e)(10) (requiring parties to highlight or otherwise mark relevant portions of exhibits). Moreover, the actions Stepien vaguely alludes to in her response brief seem to have nothing to do with her age or gender. She alleges that Guyton tampered with her computer access card, Dkt. No. 69 at 4, but in the document she cites in support, she noted that he "does that kind of thing to people," Dkt. No. 70-8 at 6, suggesting she was not singled out. She contends that in April 2019, she was required to clean a portion of the workspace, *id.* at 12, but she did not respond to or rebut NOAA's evidence that several men in the group were also responsible for the same task, Dkt. No. 35-19 at 2.

The facts section of Stepien's response to NOAA's motion for summary judgment alleges only a couple of arguably gender-based incidents scattered over her years with NOAA. First, when she arrived at NOAA in October 2016, her office was not set up while a male colleague's was ready on his arrival. Dkt. No. 70-8 at 3. Second, someone made an anonymous complaint against Stepien in October 2017 and referred to her as a "scary lady." Dkt. No. 71 at 2. Those two instances, even combined with the other conduct Stepien alleges, were not objectively severe and pervasive enough to create hostile work environment. *See, e.g.*, *Manatt*, 339 F.3d at 798 (stating

1    that Title VII is not a "general civility code"); *Denning v. Cnty. of Washoe*, 799 Fed. App'x 547,

2    547–48 (9th Cir. 2020) (upholding grant of summary judgment based on "isolated offensive

3    remarks" and instances of "unfair treatment" including assigning plaintiff to less desirable tasks

4    and subjecting her to "excessive scrutiny"). NOAA is entitled to summary judgment on Stepien's

5    hostile work environment claim.

6    **F.      The Motions to Seal**

7           1.   Sealed Docket Entries 54–55

8           Stepien has filed two motions to seal. In the first, she seeks to seal docket entries 54 and

9    55, which are Guyton and Matlock's declarations from Stepien's EEO proceedings. Dkt. No. 53.

10   Stepien filed those declarations under seal because they "are potentially considered 'confidential'

11   pursuant to the protective order" in this case, though she does not agree that they should be sealed.

12   *Id.* at 1–2; Dkt. No. 19 (Stipulated Protective Order). Because Stepien filed her motion before

13   meeting and conferring with NOAA, the Court ordered her to show cause why her motion to seal

14   should not be stricken for failure to comply with the Local Civil Rules. Dkt. No. 57 at 1–2; *see*

15   LCR 5(g)(1)(A). Stepien belatedly conferred with NOAA. *See* Dkt. Nos. 58–59. That belated

16   conference served the purpose that should have been accomplished from the start: the parties were

17   able to agree that docket entries 54 and 55 can be unsealed. Dkt. No. 58 at 4; Dkt. No. 59 at 3.

18   Therefore, the Court denies the motion to seal docket entries 54 and 55.

19          2.   Sealed Docket Entries 70-7, 73, 86-1, and 86-2

20          In her second motion to seal, Stepien seeks to seal Exhibits J and N to her motion for partial

21   summary judgment. Dkt. No. 72. Those exhibits are the notice of proposed removal Stepien drafted

22   regarding Doe, Dkt. Nos. 73, 86-1, and the decision on his notice of proposed removal, Dkt. No.

23   86-2. Again, Stepien filed the motion at NOAA's request but contends that the documents should

24

be unsealed. Dkt. No. 72 at 1–2. Stepien also filed the transcript of Matlock's deposition under seal because it contains Doe's real name. Dkt. No. 70-7.

NOAA responds that the transcript should remain under seal and Stepien should file a version with Doe's name redacted. Dkt. No. 82 at 1. NOAA notes that even though the parties agreed to use a pseudonym for Doe, Stepien filed the transcript without redacting his name. *Id.* at 2; Dkt. No. 81-1 at 2. As for the proposed and final removal notices, NOAA argues that compelling reasons support sealing the disciplinary records of non-party Doe. Dkt. No. 82 at 1. It argues that "the third-party disciplinary information Stepien proffered implicates significant privacy interests" and that courts in this district have found protecting third-party disciplinary records to be a sufficiently compelling reason to grant a motion to seal. *Id.* at 3. NOAA also notes that it has a statutory obligation under the Privacy Act (5 U.S.C. § 552a) to protect its employees' privacy and must "establish safeguards to insure the security and confidentiality of records and protect against 'any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.'" *Id.* (quoting 5 U.S.C. § 552a(e)(10)).

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *see also Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) ("Throughout our history, the open courtroom has been a fundamental feature of the American judicial system."). Accordingly, when a district court considers a sealing request, it starts with "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal court filings in connection with a dispositive motion bears the

burden of overcoming this presumption by providing "'compelling reasons' sufficiently specific" for doing so. *Kamakana*, 447 F.3d at 1182.

Under this higher "compelling reasons" standard, the Court "may seal records only when it finds a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (cleaned up). Those compelling reasons must "outweigh the general history of access and the public policies favoring disclosure[.]" *Kamakana*, 447 F.3d at 1178–79. This is achieved when, for example, a court filing might "become a vehicle for improper purposes," *Nixon*, 435 U.S. at 598, or be used "to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets," *Kamakana*, 447 F.3d at 1179.

The Court finds that employee Doe's real name is not relevant at this stage of the proceedings, and it will allow the transcript revealing his unredacted name to remain under seal. Dkt. No. 70-7; *see, e.g.*, *Gnassi v. Del Toro*, No. 3:20-cv-6095-JHC, 2022 WL 3867376, at *3 (W.D. Wash. Aug. 30, 2022) (allowing redaction of employees' names). Stepien must file a copy with Doe's name redacted within 30 days of the date of this Order.

Regarding Doe's proposed notice of removal and notice of suspension, the public has a significant interest in those records because Stepien contends that Doe is a comparator. However, Doe has a significant privacy interest in his disciplinary records. *Bakki v. Boeing Co.*, No. 20-235-JLR, 2021 WL 962488, at *6 (W.D. Wash. Mar. 15, 2021) (agreeing that publication of the non-party employee's disciplinary record would violate the employee's privacy and "expose him to public scrutiny while serving no countervailing public interest in transparency"); *Delaittre v. Berryhill*, No. 15-1905-RAJ, 2017 WL 6310483, at *3–4 (W.D. Wash. Dec. 11, 2017) (denying motion to unseal third-party employee's disciplinary records). Here, however, the concerns about Doe's privacy and exposing his disciplinary history to public scrutiny are significantly reduced

because most of the specifications in the notice of proposed removal were not sustained, and the pertinent information about his discipline and the circumstances surrounding it is already detailed in the parties' briefs and Matlock's deposition. NOAA has not identified any sensitive information in the disciplinary records that is not already in the public record or soon will be once Stepien files the redacted transcript of Matlock's deposition.

Therefore, the Court grants the motion to seal Doe's disciplinary records so the copies with his name displayed may remain under seal, but requires Stepien to file copies redacting Doe's name and a third party's email address within 30 days of the date of this order. Finally, because Stepien's counsel has displayed a lack of care in filing exhibits as detailed in this order, he must send the proposed redacted copies of the deposition transcript and disciplinary records to NOAA's counsel for approval before filing them to ensure that Doe's privacy interests are protected.

## G.     The Motions to Exclude Expert Testimony

Stepien seeks to exclude Erick West's testimony regarding mitigation, backpay, front pay, and lost retirement benefits. Dkt. No. 49 at 1. Stepien contends that his opinions "should be excluded for several reasons, including his lack of qualification to opine on mitigation, the use of a methodology for mitigation that conflicts with legal precedent, and the potential for his testimony to be extraordinarily prejudicial." *Id.* "Additionally, any calculations provided by Mr. West that rely on his mitigation calculations should also be excluded." *Id.*

For its part, NOAA seeks to exclude some of the opinions of Deborah Diamond. Dkt. No. 32. Diamond is Stepien's expert on "HR and [i]nvestigations." Dkt. No. 33-3 at 2. Specifically, NOAA moves to exclude Diamond's opinions regarding whether NOAA complied with its policies and industry standards, and whether it retaliated against Stepien. Dkt. No. 32 at 4.

1    1. Admissibility under Rule 702

2    An expert may testify if the party offering that expert "demonstrates to the court that it is

3    more likely than not that" the following factors are met:

4        (a) the expert's scientific, technical, or other specialized knowledge will help the
         trier of fact to understand the evidence or to determine a fact in issue;

5
         (b) the testimony is based on sufficient facts or data;

6
         (c) the testimony is the product of reliable principles and methods; and

7
         (d) the expert's opinion reflects a reliable application of the principles and methods
8        to the facts of the case.

9    Fed. R. Evid. 702(a)–(d).[20]

10   The Court's role at this stage is that of "gatekeeper," and at the gatekeeping stage the

11   relevant inquiry is limited to whether the expert's testimony "both rests on a reliable foundation

12   and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597

13   (1993); *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022) ("Although

14   a district court may screen an expert opinion for reliability, and may reject testimony that is wholly

15   speculative, it may not weigh the expert's conclusions or assume a factfinding role."). The party

16   seeking to admit the testimony bears the burden of proving by a preponderance of the evidence

17   that its expert's testimony is admissible. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th

18   Cir. 1996).

19   2. Stepien's Motion to Exclude Erick West

20   Stepien contends that although she has diligently searched for another job since leaving

21   NOAA, she has been unable to obtain other employment. Dkt. No. 49 at 2; *see also* Dkt. No. 28 at

22   ───────────────
23   [20] The Supreme Court adopted amendments to Federal Rule of Evidence 702, effective December 1, 2023, and ordered that said amendments govern all pending proceedings "insofar as just and practicable[.]" *See* Order Adopting Amendments to the Federal Rules of Evidence at 3 (Apr. 24, 2023), https://www.supremecourt.gov/orders/courtorders/frev23_5468.pdf; *see also* 28 U.S.C. § 2072. Because the parties submitted their expert testimony before December 2023, the Court will apply the previous iteration of Federal Rule of Evidence 702 here.

24   ORDER ON MOTIONS FOR SUMMARY JUDGMENT, TO SEAL, AND TO EXCLUDE EXPERT TESTIMONY - 54

27 (seeking "[d]amages for lost wages, back pay, front pay, lost benefits, medical expenses, retirement credit, and all other economic losses proximately caused by Defendant"). NOAA asserts an affirmative defense that Stepien has failed to mitigate her damages, Dkt. No. 31 at 15, and disclosed Erick West as a rebuttal expert regarding Stepien's claimed damages, Dkt. No. 50-2 at 2. West has bachelor's and master's degrees in economics and has been working as an economist since 2003. *Id.* at 21. Stepien does not dispute West's credentials or qualifications as a forensic economist. Dkt. No. 49 at 11.

West opines about the amount of Stepien's past lost wages, health, and TSP benefits; her future lost wages, health, and TSP benefits; and her future lost FERS pension benefits. Dkt. No. 50-2 at 7, 9–10, 16, 18–20. He calculates how her salary would have increased over time had she remained employed with NOAA, *id.* at 8, and notes the cash awards she could have received, *id.* at 9. West also opines that "with a reasonable job search effort, Dr. Stepien should have been able to secure alternative employment by <u>at least</u> April 1, 2023 that was commensurate with her education and extensive work experience." *Id.* at 11. He bases that conclusion on statistics from the U.S. Bureau of Labor Statistics ("BLS") regarding the average duration of unemployment for job seekers in 2021 and 2022, and assumed "a 24-month job search period [that] is 3 to 4 times longer than the reported data from the BLS." *Id.* West also identifies a handful of "jobs and Seattle pay rates that are commensurate with Dr. Stepien's education and employment history," *id.*, and based on those jobs, he "estimated a mitigation salary of $148,452 effective April 1, 2023," *id.* at 12 (emphasis omitted). He also "estimated employer paid mitigation retirement benefits of 7.3% based on the U.S. average employer cost for employee retirement benefits as reported by the [BLS]." *Id.* (emphasis omitted). In addition, West offered his critiques of the damages report prepared by Stepien's expert, Eric Knowles, and disagreed with Knowles' calculation of Stepien's

1    life expectancy, his failure to consider Stepien's prior federal service, and assumption that Stepien

2    was incapable of sustaining other employment during the loss period. *Id.* at 13.

3          Stepien argues that West cannot opine regarding whether she conducted a reasonable job

4    search. Dkt. No. 49 at 3. NOAA responds that West is not opining on that issue, Dkt. No. 65 at 6,

5    so that issue is moot. *See also* Dkt. No. 50-3 at 9 (West's deposition testimony stating that he is

6    "not specifically providing an opinion that her search has been unreasonable").

7          Stepien also argues that West should not be permitted to testify regarding whether she

8    would have found a job within two years based on BLS data because those statistics are "not even

9    tailored to a person of her educational background and experience." Dkt. No. 49 at 3. She also

10   takes issue with West's deposition testimony when he "concluded that giving Dr. Stepien three to

11   four times longer than what a typical worker takes to find full-time work is a reasonable estimate

12   for this case, just to provide a complete analysis of her losses." *Id.* (quoting Dkt. No. 50-3 at 10).

13   She argues that West's "opinion does not gather relevant facts to assess mitigation of damages"

14   such as considering "actual jobs available in the marketplace" or jobs Stepien turned down. *Id.* at

15   5. She also argues that he is not qualified to assess mitigation efforts, *id.* at 5–6, and he did not use

16   a reliable methodology, *id.* at 6, 8–10.

17         NOAA argues that West can rely on BLS data to opine about how long it should have taken

18   Stepien to secure comparable employment because such data is a "source[] of wage data your

19   economist can rely on in making his evaluations." Dkt. No. 65 at 5 (quoting Gerald D. Martin &

20   Marc. A. Weinstein, *Determining Economic Damages* § 337 (2012)). However, the quoted source

21   refers to BLS wage rates, not expected job search durations. Dkt. No. 66-1 at 4–5. Regardless, the

22   problem here is not the reliability of BLS data in general, but the fact that West fails to set forth

23   how he reached his assumption that it should have taken Stepien no more than two years (three to

24   four times the average length of time) to obtain a job "that was commensurate with her education

and extensive work experience." Dkt. No. 50-2 at 11. West testified that he arrived at the two year figure using "a methodology used by most economists," and which he has also "used many times in [his] career[.]" Dkt. No. 66-2 at 11. NOAA also argues that "[o]verall, courts have accepted West's methodology in other cases." Dkt. No. 65 at 7 (citing *O'Kell v. Haaland*, 598 F. Supp. 3d 1032, 1050–51 (E.D. Wash. 2022), *vacated and remanded*, No. 22-35701, 2023 WL 5665760 (9th Cir. Sept. 1, 2023)). Even so, West does not specify what that methodology was or how he applied it here to discern the amount of time it should have taken Stepien to secure another job. Where, as here, an expert relies primarily on his experience, he "must explain 'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1246 (W.D. Wash. 2018) (quoting Fed. R. Evid. 702 Advisory Committee notes to 2000 amendments).[21] Absent information about how West's experience led to his conclusion, "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146. Therefore, the Court excludes West's opinion that Stepien should have secured other employment within two years and his mitigation calculations based on that assumption.[22]

West's report presents another problem: it lists six positions "that are commensurate with Dr. Stepien's education and employment history," Dkt. No. 50-2 at 11, but that opinion is the province of a vocational expert, which West is not, *Goldstine v. FedEx Freight Inc.*, No. C18-1164-MJP, 2020 WL 5500369, at *1–2 (W.D. Wash. Sept. 11, 2020); Dkt. No. 50-3 at 8. Even if

---

[21] *See also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (a district court may exclude opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert"); *Powell v. Anheuser-Busch Inc.*, CV-09-729-JFW (VBKx), 2012 WL 12953439, at *6 (C.D. Cal. Sept. 24, 2012) (concluding that where vocational rehabilitation expert relied "on the mere fact of his experience" to support his conclusions and essentially asked the court "to take his word for it," such a "subjective, conclusory approach" could not "reasonably be assessed for reliability").

[22] Because the Court has precluded West from testifying about the length of time it should have taken Stepien to obtain other employment, it also precludes West from testifying regarding the "average duration of unemployment." Dkt. No. 50-2 at 11. Without any tie to Stepien's employment situation, that data for workers in an unidentified geographic area is irrelevant and potentially prejudicial and confusing to the jury.

West had the requisite experience to opine on this issue, his opinion about other "commensurate" positions is not helpful to the trier of fact because NOAA's burden to prove its mitigation defense requires not only showing that Stepien was reasonably diligent during the time in question, but also that there were substantially equivalent jobs available that Stepien could have obtained. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995). "Substantially equivalent" employment requires "virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as Plaintiff's [former] position." *Hughes v. Mayoral*, 721 F. Supp. 2d 947, 967 (D. Haw. 2010) (citation omitted); *see also Goldstine*, 2020 WL 5500369, at *2 (holding that the expert's "failure to identify specific available jobs [during the relevant time] renders his opinion about 'substantially equivalent employment' during that time inadmissible"); *EEOC v. Wal-Mart Stores, Inc.*, No. 17-cv-739-JDP, 2020 WL 1527324, at *2 (W.D. Wis. Mar. 31, 2020) ("[BLS] statistics do not represent the actual number of job openings in these fields or include any information about the applicant pool, hours, wages, job duties, or locations of any available positions."). West's opinion does not state that the listed positions were substantially equivalent to the position Stepien held at NOAA. Nor does West opine that any of the listed positions were actually available in Stepien's geographic area during the relevant time. *Smith v. Rosebud Farmstand*, No. 11-cv-9147, 2016 WL 5912886, at *20 (N.D. Ill. Oct. 11, 2016) (finding that the number of job advertisements "tells the Court very little about whether Plaintiff had a legitimate opportunity to secure those jobs had he applied"), *aff'd sub nom. Smith v. Rosebud Farm, Inc.*, 898 F.3d 747 (7th Cir. 2018).

For those reasons, Court excludes the following of West's opinions:

- his opinion that "with a reasonable job search effort, Dr. Stepien should have been able to secure alternative employment" within two years of leaving NOAA, and his mitigation calculations based on that opinion;

- his opinion regarding the "average duration of unemployment" for other workers; and

- his opinion regarding what specific jobs are "commensurate with Dr. Stepien's education and employment history."

Dkt. No. 50-2 at 11.

However, as NOAA argues, Stepien does not dispute that the remainder of West's opinions are within his expertise, consistent with Rule 702, and admissible. Dkt. No. 65 at 8. Those include his analysis of Stepien's alleged lost past and future wages and benefits, salary growth at NOAA, her paid health benefits, employer-paid retirement benefits, worklife expectancy, and life expectancy. Dkt. No. 50-2 at 7, 12–13. Stepien's motion to exclude those opinions is denied.

### 3.  NOAA's Motion to Exclude Certain Testimony of Deborah Diamond

Stepien offers Deborah Diamond as an expert about "HR and [i]nvestigations." Dkt. No. 33-3 at 2. Diamond states in her report that she has worked as "a federal manager, management official, agency-grievance examiner, and certified mediator," and has "extensive knowledge of federal government human-resource policies and procedures, including those regarding discipline." Dkt. No. 33-1 at 3. She has worked as an EEO Officer and an investigator for the IRS, and as an independent fact-finder and licensed private investigator. *Id.*; *see also* Dkt. No. 68 at 2.

NOAA notes that Diamond offers opinions "about the investigatory process, or what she describes as 'investigating the investigations.'" Dkt. No. 32 at 4. Although NOAA contends that those opinions "are of little relevance," it "does not challenge them." *Id.*[23] NOAA does move to exclude the following of Diamond's opinions:

- Whether NOAA's selected discipline complied with NOAA and DOC policies and

---

[23] Stepien cites to two bench trials in which Diamond testified regarding investigation-related issues. *Bathke v. City of Ocean Shores*, No. C19-5338-BHS, 2021 WL 1423117, at *5, 11 (W.D. Wash. Apr. 15, 2021); *O'Kell*, 598 F. Supp. 3d at 1041–43.

"industry standards" (Diamond Report, Section V.B);

- Whether NOAA followed its administrative leave policy (Diamond Report, Section V.C);

- Whether NOAA retaliated against Stepien (Diamond Report, Section V.D).

Dkt. No. 32 at 4.

In Section V.B of the report, Diamond opines on generally accepted standards of performance, includes a chart regarding how NOAA "addressed Dr. Stepien's performance/conduct issues compared to the standard practices for addressing performance/conduct issues," opines that discipline should be "progressive," and opines "on whether the discipline imposed was administered appropriately" to Stepien. Dkt. No. 33-1 at 6, 22–27. In Section V.C of Diamond's report, she describes generally accepted standards regarding when and how administrative leave should be used, *id.* at 27, and opines that NOAA failed to apply those standards to Stepien, *id.* at 28. And in Section V.D, Diamond opines, among other things, that "[f]or most human resource professionals, the decision to discipline Dr. Stepien while the harassment investigations were in progress violates strong prohibitions against retaliation found in Department of Commerce's policies and the applicable EEO laws." *Id.* at 30; *see also id.* ("The timing of Dr. Stepien's EEO complaints and management's disciplinary actions call into question whether management's actions were wholly nondiscriminatory or non-retaliatory."). In conclusion, Diamond states that the agency "did not follow some of its own policies and generally accepted standards when investigating and resolving Dr. Stepien's EEO and 955 complaints, administering discipline in a constructive, progressive, consistent and timely manner, or following the rules for placing Dr. Stepien on extended administrative leave." *Id.* at 31.

Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *Daubert*, 509 U.S. at 589. The Court first considers whether Diamond's opinions are reliable. *Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1075 (D. Or. 2013). NOAA argues that Diamond

had never reviewed NOAA or DOC policies before this case, conducted investigations for NOAA, or imposed discipline. Dkt. No. 32 at 5–6; *see also* Dkt. No. 33-2 at 8–9, 27. Stepien counters that Diamond worked for years as a federal manager and has "experience with federal government policies and procedures, including discipline." Dkt. No. 67 at 5. However, Diamond has no experience administering discipline, or with the policies of DOC or NOAA, and she has not shown that her personal experience and knowledge provide insight into NOAA's policies or practices. Therefore, her experience alone cannot establish a sufficient basis to demonstrate the reliability of her opinions in this case. *See Moussouris*, 311 F. Supp. 3d at 1246–47; *cf. Siring*, 927 F. Supp. 2d at 1072, 1076 (finding expert was reliable when she had "developed tenure processes for the University of Oregon in compliance with the Oregon Administrative Rules ('OARs'); . . . reviewed tenure processes for compliance with the OARs," and also "provided a sufficient explanation of how her personal experience and knowledge led her to understand and define the generally accepted standards for tenure review policies in the Oregon University System.").

Even if Diamond possessed the requisite experience to supply reliable opinions here, the Court must also determine if her expert testimony "would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). "Expert testimony is not helpful to a jury, and thus not relevant, when it addresses an issue that is within 'the common knowledge of the average layman.'" *Easton v. Asplundh Tree Experts, Co.*, No. C16-1694-RSM, 2017 WL 4005833, at *5 (W.D. Wash. Sept. 12, 2017) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001)). And to the extent that experts base their opinions on "nothing more than his common sense, a jury can accomplish the same analysis without an expert." *Id.*

NOAA argues that Diamond's opinions regarding what NOAA's policies mean and whether the agency complied with them are based on common sense, within the province of the

jury's understanding, and not helpful to the trier of fact. Dkt. No. 32 at 7–9. Stepien responds that "[o]ne of the reasons [she] retained Deborah Diamond [was] to show how Defendant deviated from established 'policy or practice' to [her] disadvantage." Dkt. No. 67 at 1 (quoting *Earl*, 658 F.3d at 1117). Stepien contends that Diamond's "proposed testimony addresses an issue beyond the common knowledge of laypersons: the processes that federal managers and specifically managers at NOAA should take before issuing form[al] discipline." *Id.* at 8. However, as NOAA contends, Diamond's opinions about what steps NOAA should have taken to achieve better management are irrelevant. Dkt. No. 32 at 9; *see also Elosu*, 26 F.4th at 1023 (courts must "ensur[e] that an expert's testimony . . . is relevant to the task at hand" (quoting *Daubert*, 509 U.S. at 597). The issue is not whether NOAA followed best practices but rather whether it followed its own policies, *Earl*, 658 F.3d at 1117, and whether its stated reasons for its actions were honest or the product of discrimination or retaliation, *Villiarimo*, 281 F.3d at 1063; *Green v. Maricopa Cnty. Cmty. Coll. Sch. Dist.*, 265 F. Supp. 2d 1110, 1127–29 (D. Ariz. 2003) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the that decision." (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000))). Therefore, whether NOAA followed best practices is not relevant or helpful to the trier of fact.

For the same reasons, NOAA's compliance with industry standards it is not relevant or helpful here where the focus is on the employer's honest belief and its compliance with its own policies. *Villiarimo*, 281 F.3d at 1063; *Earl*, 658 F.3d at 1117. As NOAA argues, Dkt. No. 32 at 10–11, Diamond's opinions about whether NOAA complied with "industry standards" are irrelevant because she conceded in her deposition that "industry standards" do not control the federal government, Dkt. No. 33-2 at 22–23. For example, DOC has its own discipline policy with

1    its own requirements. Dkt. No. 32 at 11; Dkt. No. 70-1. In the same vein, NOAA argues that

2    Diamond's opinions that NOAA should have engaged in a 12–16 step discipline process are

3    irrelevant. Dkt. No. 32 at 9; Dkt. No. 33-1 at 25–26; Dkt. No. 33-2 at 52. NOAA's disciplinary

4    policy does not include such a lengthy program. Dkt. No. 32 at 11; *see generally* Dkt. No. 70-1.

5    Because the agency's policies—not industry standards—govern here, Diamond's opinions

6    regarding adherence to industry standards and her suggestion of a lengthier progressive discipline

7    process would not be helpful to the trier of fact.

8          Finally, NOAA's discipline and administrative leave policies are not complex and the trier

9    of fact is capable of understanding them—and whether the agency complied with them—without

10   the need for expert guidance. *See* Dkt. No. 70-1 (discipline policy); Dkt. No. 70-2 (administrative

11   leave policy). Diamond stated during her deposition that the standards employees were expected

12   to follow "certainly would be based on something that was not contrary to common sense[.]" Dkt.

13   No. 33-2 at 36–37; *see also id.* at 28–29 (investigatory standards including conducting a prompt,

14   thorough, and impartial investigation are obvious); *see also id.* at 61 (explaining that she concluded

15   that the agency did not follow its administrative leave policy by "looking at the face of the policy").

16   The fact finder can read the policies too. Similarly, despite Stepien's argument to the contrary,

17   Dkt. No. 67 at 8, the trier of fact can determine whether the agency treated others, such as Guyton,

18   differently, without expert opinion. Therefore, the Court excludes Diamond's testimony regarding

19   what NOAA's policies mean, whether NOAA complied with them, and industry standards,

20   because they are not helpful to the trier of fact. *Cf. Siring*, 927 F. Supp. 2d at 1076 ("Professorial

21   tenure is a unique system, and the Court finds that as an expert in the field of tenure-track

22   evaluation, review, and promotion, Dr. Stockard's opinion addresses issues beyond the common

23   knowledge of the average layperson and will aid a jury in making its determination.").

24

1    NOAA also argues that Diamond's opinions about why the agency placed Stepien on

2    administrative leave and requested a supplemental investigation are speculative and must therefore

3    be excluded. Dkt. No. 32 at 12–14. Diamond opined during her deposition that NOAA might have

4    (1) extended Stepien's leave to create an opportunity for her to engage in further misconduct,

5    (2) obtained a supplemental report from the investigators for improper reasons, and (3) added a

6    broad conduct unbecoming allegation because the agency was not confident that other charges

7    would be sustained. Dkt. No. 33-2 at 64–66, 68. Diamond conceded that she had not seen any

8    evidence to support her theory regarding the supplemental report and was speculating regarding

9    the inclusion of the conduct unbecoming charge. *Id.* at 65–66, 68. Her "unsubstantiated speculation

10   and subjective beliefs" do not equate to the specialized knowledge required for admissibility under

11   Rule 702. *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997); *see also*

12   *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (stating Rule 702 requires

13   that an expert's testimony be reliable, and that it must "relate to scientific, technical, or other

14   specialized knowledge, which does not include unsupported speculation and subjective beliefs");

15   *Snead v. Wright*, 625 F. Supp. 3d 936, 941 (D. Alaska 2022) ("Any testimony that speculates as to

16   motive, intent, or mental state is not appropriate expert testimony and will be subject to objection

17   and exclusion at trial."); *Siring*, 927 F. Supp. 2d at 1077–78 (excluding expert testimony regarding

18   the employer's intent, motive, or state of mind). Accordingly, the Court excludes those opinions.

19   Finally, NOAA argues that Diamond's opinions regarding retaliation go to the ultimate

20   issue, which is the province of the trier of fact. Dkt. No. 32 at 14. Diamond testified during her

21   deposition that she would be offering an opinion that retaliation occurred. Dkt. No. 33-2 at 79; *see*

22   *also* Dkt. No. 67 at 11 (Stepien noting that Diamond will opine that placing Stepien on leave while

23   her harassment investigation was pending calls retaliation into question). Expert testimony that

24   embraces an ultimate issue is not per se improper. Fed. R. Evid. 704(a); *see Hangarter v. Provident*

*Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." (citation omitted)). However, an expert cannot "give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter*, 373 F.3d at 1016 (citation omitted); *see also Easton*, 2017 WL 4005833, at *5 (expert's opinion that company policies were adequate and its actions reasonable was an impermissible legal conclusion). Diamond's report opines: "For most human resource professionals, the decision to discipline Dr. Stepien while the harassment investigations were in progress violates strong prohibitions against retaliation found in Department of Commerce's policies and the applicable EEO laws." Dkt. No. 33-1 at 30; *see also id.* ("The timing of Dr. Stepien's EEO complaints and management's disciplinary actions call into question whether management's actions were wholly nondiscriminatory or non-retaliatory."). Stepien argues that those statements do not "offer opinions that state whether Defendant retaliated or discriminated against Stepien," Dkt. No. 67 at 11, but they are opinions on that front. The opinions are thus excluded as improper legal conclusions.

One issue remains: NOAA argues that Diamond cannot base her opinions on evidence that Stepien allegedly "misappropriated" from NOAA. Dkt. No. 32 at 14–15. Stepien seeks to strike that argument and the corresponding declaration paragraphs that address it. Dkt. No. 67 at 12–13. Having found that Diamond's non-investigation-related opinions are inadmissible for other reasons, the issue is moot for purposes of this motion but may be renewed in an appropriate motion in limine.

### H.    Stepien's Motion for Summary Judgment on NOAA's Affirmative Defense of Failure to Mitigate Damages

As part of her motion for partial summary judgment, Stepien requests that "Defendant's 'failure to mitigate' affirmative defense be dismissed when Defendant . . . offers no evidence

questioning the 'reasonableness' of Plaintiff's actual job search." Dkt. No. 51 at 3; *see also id.* at 15–16. Stepien notes that NOAA relies exclusively on testimony from its proposed expert Erick West to support the defense, and Stepien has moved to exclude his opinion. *Id.* at 15; *see also* Dkt. No. 49 (motion to exclude). NOAA responds that its mitigation defense should not be dismissed for the same reasons provided in its opposition to Stepien's motion to exclude. Dkt. No. 63 at 2, 10.

To establish that Stepien failed to mitigate her damages, NOAA bears the ultimate burden of proving that (1) during the time in question, there were substantially equivalent jobs available that Stepien could have obtained, and (2) that she failed to use reasonable diligence in seeking such a position. *Odima*, 53 F.3d at 1497. Where, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of an issue of material fact . . . by showing that the nonmoving party lacks evidence of an essential element of its . . . defense." *Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1156 (W.D. Wash. 2019) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)). To defeat such a showing, the defendant, "as the party who carries the burden of proof on an affirmative defense, . . . must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Washington v. Matheson Flight Extenders, Inc.*, 440 F. Supp. 3d 1201, 1222 (W.D. Wash. 2020) (cleaned up).

The Court agrees with Stepien that NOAA has not presented any admissible evidence that she failed to use reasonable diligence in seeking another position. Nor has it provided any arguments other than those presented in its opposition to the motion to exclude as to why the defense should proceed, and the Court has excluded West's opinions regarding mitigation as set

forth above. Accordingly, the Court grants Stepien's motion for summary judgment regarding NOAA's mitigation defense.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part NOAA's motion for summary judgment, Dkt. No. 34, and GRANTS in part and DENIES in part Stepien's motion for partial summary judgment, Dkt. No. 51. The Court DENIES Stepien's first motion to seal, Dkt. No. 53, and DIRECTS the Clerk to unseal docket entries 54 and 55. The Court GRANTS in part and DENIES in part Stepien's second motion to seal, Dkt. No. 72. The Court GRANTS in part and DENIES in part Stepien's motion to exclude, and GRANTS NOAA's motion to exclude. Dkt. Nos. 32, 49.

Dated this 4th day of September, 2024.

Lauren King
United States District Judge