UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROL STEPIEN, Plaintiff, v. HOWARD LUTNICK, Defendant. | CASE NO. 2:21-cv-01410-LK<br><br>ORDER GRANTING IN PART, DENYING IN PART, STRIKING IN PART, AND DEFERRING IN PART MOTIONS IN LIMINE; GRANTING IN PART AND DENYING IN PART MOTION TO SEAL |

This matter comes before the Court on Defendant Howard Lutnick's motions in limine, Dkt. No. 120, Plaintiff Carol Stepien's motion to seal, Dkt. No. 124, and her motions in limine, Dkt. No. 127 (corrected copy at Dkt. No. 139-1). For the reasons set forth below, the motions in limine are granted in part, denied in part, stricken in part, and deferred in part. The Court grants in part and denies in part the motion to seal.

## I. BACKGROUND

Stepien worked at the Pacific Marine Environmental Laboratory ("PMEL"), a lab within the National Oceanic and Atmospheric Administration ("NOAA") in Seattle, Washington. Dkt. No. 28 at 2. In 2021, she filed a complaint against NOAA, alleging discrimination, retaliation, and

hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16(a) and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a). *See generally id.* She contended that NOAA discriminated against her based on her sex and age, subjected her to a hostile work environment based on her sex and age, and retaliated against her when she complained. *Id.* at 25–26.

On September 4, 2024, the Court issued an order on the parties' cross-motions for summary judgment that narrowed the issues for trial. Dkt. No. 89. The Court granted Defendant's motion for summary judgment on Stepien's (1) untimely discrimination claim regarding her 2018 receipt of a letter of reprimand ("LOR"), (2) claim of a hostile work environment based on age, sex, and alleged retaliation, and (3) claim that the final decision to suspend her for 10 days in 2019 was discriminatory or retaliatory. *Id.* at 22, 25–28, 40–43, 45–50. The remaining claims for trial are (1) whether PMEL director Michelle McClure's decision to propose a 10-day suspension in July 2019 was an adverse action and, if so, whether it was retaliatory; (2) whether McClure's decision to place Stepien on paid administrative leave in May 2020 was an adverse action and, if so, whether it was discriminatory or retaliatory; (3) whether McClure's decision to propose Stepien's removal in January 2021 was an adverse action and, if so, whether it was retaliatory; and (4) whether Matlock's decision to remove Stepien from federal service in April 2021 was discriminatory or retaliatory.

Trial is scheduled to begin on November 30, 2026. Dkt. No. 113.

## II. DISCUSSION

### A. Legal Standard

Parties may move "to exclude anticipated prejudicial evidence before the evidence is actually offered," *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984), and the Court enjoys "wide discretion in determining the admissibility of evidence," *United States v. Abel*, 469 U.S. 45, 54

(1984). The Court may amend, renew, or reconsider its rulings in limine in response to developments at trial. *Luce*, 469 U.S. at 41–42.

The Court's analysis is guided primarily by Federal Rules of Evidence 401 and 403. *See Houserman v. Comtech Telecomms. Corp.*, 519 F. Supp. 3d 863, 867 (W.D. Wash. 2021). The district court must first consider whether the evidence at issue "has any tendency to make a fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. If so, the evidence is relevant and therefore generally admissible. *See* Fed. R. Evid. 402. But there are many exceptions to this general rule. Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

**B. Defendant's Motions in Limine**

1. Defendant's Motion to Bar Testimony Regarding Stepien's Dismissed Hostile Work Environment Claim and Related Emotional Distress

Defendant seeks to exclude Stepien's evidence that relates to her now-dismissed hostile work environment claim and her related emotional distress damages. Dkt. No. 120 at 2–4. Defendant contends that Stepien's hostile work environment allegations "largely center on her acrimonious relationship with Jim Guyton," but she does not allege that he was responsible for any of the adverse actions that remain for trial. *Id.* at 2. The only specific exhibit Defendant seeks to exclude regarding this issue is exhibit 11, which "is a series of emails from October 2018 that discuss a meeting held where she alleges that Guyton was out to discriminate against her about her publication record." *Id.*; *see also* Dkt. No. 121-2 at 2, 4.[1] Defendant also points to other indicia that Stepien "seek[s] to relitigate [her] relationship with Guyton." Dkt. No. 120 at 2. Specifically,

---

[1] In the most recent version of the proposed pretrial order, the parties refer to these emails as exhibit 10. Dkt. No. 143-1 at 11.

Stepien designated "all but the first five pages of Guyton's 222-page deposition transcript" in her fourth amended pretrial statement, which includes questioning about "events that predate the actions at issue," and seeks to proffer testimony of two former colleagues (Richard Feely and Edward Cokelet) who lacked knowledge about relevant events but did provide testimony regarding Guyton's relationship with Stepien during their depositions. *Id.* at 2–3; Dkt. No. 121-3 at 10 (designating the "entire transcript" of Guyton's deposition).

Stepien states that in response to Defendant's objection, she has now served "narrowed page-and-line designations of Mr. Guyton's testimony." Dkt. No. 147 at 3. After briefing this motion, the parties filed their deposition designations, Dkt. No. 156, which the Court will address separately.

Stepien does not specifically address exhibit 11, but instead broadly argues that her acrimonious relationship with Guyton "is relevant evidence to her surviving discrimination and retaliation claims." Dkt. No. 147 at 2–3. She argues that as the Court explained in its summary judgment order, Guyton is a potential comparator on her administrative leave claim, so his conduct towards Stepien is relevant. *Id.* (citing Dkt. No. 89 at 29–30). The Court agrees that Guyton's conduct toward Stepien is relevant to the extent that McClure knew about it when she placed Stepien on leave.

The Court also previously found that Stepien had raised a genuine issue of material fact regarding whether McClure was motivated by retaliatory animus in proposing Stepien's suspension. Dkt. No. 89 at 41. The Court explained that Stepien's proposed suspension included email excerpts of Stepien's harassment and discrimination complaints that McClure "characterize[d] as examples of 'comments' that 'were inappropriate and demonstrate[d] conduct unbecoming.'" *Id.* at 42. The Court agrees with Stepien that the jury "cannot evaluate this evidence without knowing the underlying complaints and whom they concerned." Dkt. No. 147 at 3.

Therefore, the Court will not exclude testimony about those specific complaints to which McClure referred.

As for exhibit 11, Stepien has not established the relevance of the first page, her October 22, 2018 email to her colleague Richard Feely. Dkt. No. 121-2 at 2. She does not contend that he was a decision-maker in any of the actions remaining for trial or argue that he retaliated against her for complaining about Guyton. Nor is Stepien's October 22, 2018 email to Feely relevant to her claim for emotional distress because the underlying issue—her complaint about how Guyton treated her at an October 2018 meeting—relates to her now-dismissed hostile work environment claim. *Id.* The Court thus excludes the October 22, 2018 email to Feely.

However, Stepien has established the relevance of the rest of exhibit 11, as well as the October 2018 meeting to which it relates. Stepien's emails assert that Guyton's actions in the October 2018 meeting reflected "gender bias" against her, and she forwarded that complaint to Matlock and now accuses him of retaliation. *Id.* at 3–9. Those emails are thus relevant. And the Court does not agree with Defendant's contention that evidence regarding Guyton's alleged mistreatment of Stepien is likely to confuse the jury or waste the Court's time. Dkt. No. 120 at 3. Instead, it is more likely that the jury would be confused by the absence of context about Stepien's allegations about Guyton that McClure or Matlock knew about when they made their decisions.

Finally, there does not appear to be any dispute that Stepien—and her proposed witnesses Feely and Cokelet—cannot testify about her alleged emotional distress related to her interactions with Guyton and her dismissed hostile work environment claim, but Stepien can testify that she suffered emotional distress as a result of the proposed suspension, paid administrative leave, proposed removal, and final removal, and Feely and Cokelet can testify "as lay witnesses to what they personally observed of Dr. Stepien's demeanor" after those events but "not Stepien's dismissed claims." Dkt. No. 147 at 4; *compare* Dkt. No. 120 at 2–5, *with* Dkt. No. 147 at 4–5. In

addition, Stepien describes the operational topics Cokelet and Feely will testify about, Dkt. No. 147 at 4, and Defendant does not appear to challenge their ability to testify about those issues, Dkt. No. 120 at 2–3. To the extent that Defendant contends that their knowledge is limited on those topics, *id.*, that can be explored on cross-examination.

Accordingly, this motion is granted in part and denied in part.

2. <u>Defendant's Motion to Exclude Evidence Regarding John Doe</u>

Defendant argues that the Court should not permit Stepien to present evidence regarding discipline issued to alleged comparator John Doe[2] because it is irrelevant. Dkt. No. 120 at 5. Defendant notes that the Court's order on summary judgment held that "there is no genuine issue of material fact regarding whether Doe and Stepien were similarly situated." *Id.* (quoting Dkt. No. 89 at 27). Defendant acknowledges that the Court's ruling was made in the context of the final 10-day suspension, but he argues that "there is no reason that the Court's reasoning should not apply equally to her remaining disparate treatment claims concerning her removal or administrative leave." *Id.* (arguing that "Stepien's conduct warranting her removal—mistreating subordinates and failure to follow instructions during NOAA's investigation—are even further afield from what Stepien accused Doe of doing than the conduct underlying her suspension").

Stepien argues that evidence regarding Doe is relevant "to show how Dr. Matlock, the deciding official, inconsistently applied NOAA's disciplinary policy when it came to [her] removal." Dkt. No. 147 at 5. She notes that the Court's order on the motions for summary judgment stated, "Nor can the Court assume that reference to untimely LORs was the norm when Matlock's suspension letter to Doe did not reference Doe's prior receipt of an LOR, even though the circumstances underlying his LOR and suspension both arguably reflected dishonesty." *Id.* (quoting Dkt. No. 89 at 34). The summary judgment order explained that Stepien adequately

[2] Doe is a pseudonym the parties and the Court have used to protect that employee's privacy. Dkt. No. 89 at 7 n.3.

established pretext for purposes of summary judgment because Matlock included Stepien's receipt of an LOR in her termination decision but did not reference Doe's receipt of an LOR in his suspension decision. Dkt. No. 89 at 34.

However, the Court does not agree with Stepien that it is necessarily relevant that Matlock "mitigated Doe's proposed removal to a suspension despite Doe having a previous LOR that was 'live', but didn't mitigate [her] proposed removal down despite [her] previous LOR being 'stale.'" Dkt. No. 147 at 6. This argument is an attempt to draw a false equivalency between the two decisions, as if the conduct was the same and the LORs were the sole determining factor of whether to mitigate a recommendation. In reality, there were many differences: the recommenders were different, and as the Court has already explained, Doe's conduct was markedly different than Stepien's. Dkt. No. 89 at 15–18, 27; Dkt. Nos. 35-14, 35-15, 86-1, 86-2. The recommendations were thus made based on different factual scenarios. Although Stepien may explore the potential inconsistent application of NOAA's disciplinary policy with respect to the LORs, she may not suggest a false equivalency between Doe's conduct and her own.

Defendant also argues that because "Doe's disciplinary history has no value as a comparator (and this Court has said it does not), any remaining probative value it may have is substantially outweighed by the danger of unfair prejudice, confusion, and waste of time for Defendant to have to elicit evidence on Doe's conduct and should be excluded." Dkt. No. 120 at 6. However, the issue for purposes of this motion is not whether Doe was a proper comparator for purposes of the discipline he received in light of his different conduct as Defendant contends, *id.* at 5–6, but whether Stepien can present evidence of Matlock's purportedly different consideration of the two employees' LORs as Stepien argues, Dkt. No. 147 at 6. The Court will not exclude that evidence for that purpose, which does not run afoul of Rule 403. This does not mean, as Defendant fears, Dkt. No. 120 at 6, that Stepien can present evidence about Doe to relitigate her dismissed

claim regarding her 10-day suspension.

Finally, Stepien argues that while she does not object to referring to Doe under a pseudonym in the public docket, he should be referred to by his real name at trial. Dkt. No. 147 at 6. Defendant did not move to refer to him as "Doe" at trial, so this issue does not appear to be in dispute.

This motion is granted in part and denied in part. Stepien can present evidence of Matlock's purportedly different consideration of Doe's and Stepien's LORs for purposes of showing pretext in the termination decision, but may not present evidence about Doe to relitigate her dismissed claim regarding her 10-day suspension or suggest that Doe's conduct was equivalent to her own.

3. Defendant's Motion to Exclude Evidence Regarding Certain Law and Policies

Defendant contends that the Court should exclude Stepien's evidence regarding law and policies not at issue in this case. Dkt. No. 120 at 6–7. Specifically, Defendant argues that Stepien's proposed exhibit 2, a document titled "No-FEAR Act," is irrelevant. *Id.* at 6 (citing Dkt. No. 121-7). Stepien has not asserted a claim under that act, nor does it provide a private right of action. Similarly, Defendant seeks to exclude Stepien's proposed exhibits 3 and 54—two documents discussing Department of Commerce harassment policies—as irrelevant because the Court dismissed Stepien's hostile work environment claim. *Id.* at 6–7 (citing Dkt. Nos. 121-8, 121-9). Finally, Defendant seeks to exclude proposed exhibit 56—a NOAA "Summary of Ethics Rules"—that "relates to her arguments concerning Dr. John Doe, whom this Court found was not an appropriate comparator for her discrimination claims." *Id.* at 7 (citing Dkt. No. 121-11). Defendant argues that in addition to being irrelevant, proposed exhibits 2, 3, 54, and 64 "explain the workings of federal antidiscrimination and retaliation law" and thus "invade the role of the Court," whose

duty it is "to instruct the jury on what the law is." *Id.*[3]

Stepien argues that the policies are "relevant to [her] actionable claims at trial because NOAA's deviation from those policies is evidence of pretext." Dkt. No. 147 at 6. Stepien argues that she will "offer Proposed Exhibit 2 only in examining Dr. McClure, who testified that she has seen the document and confirmed that it applies to NOAA employees." *Id.* at 7. Similarly, Stepien avers that exhibit 46 (which appears to be the same October 3, 2020 policy that Defendant refers to as exhibit 54, *compare* Dkt. No. 121-9 *with* Dkt. No. 148-3) is relevant because it prohibits retaliation. *Id.* She notes that in the summary judgment order, the Court found that Defendant's extension of Stepien's leave in alleged violation of NOAA policy could be evidence of pretext. *Id.* at 6 (citing Dkt. No. 89 at 30–31). But here, arguing that NOAA's alleged violations of antidiscrimination and retaliation policies is evidence of pretext reflects circular reasoning, not pretext. The Court finds that these two policies have no relevance and admitting them would invade the Court's role to instruct the jury on the law. *See, e.g.*, *Newsom v. Runnels*, 378 F. App'x 641, 642 (9th Cir. 2010) ("It is the duty of the court to instruct the jury as to the law[.]" (citation modified)). The Court excludes proposed exhibits 2 and 46/54 on this basis.

However, Stepien has shown the relevance of exhibit 3, Allegations of Harassment Prohibited by Federal Law. Dkt. No. 121-8. That policy states that when harassment allegations "concern the employee's direct or first-line supervisor or a co-worker in the unit, consideration should be given to undertaking immediate measures before completing the inquiry," including "placing the supervisor or coworker on non-disciplinary leave with pay pending the conclusion of the inquiry[.]" Dkt. No. 121-8 at 4. Stepien argues that "NOAA investigated both the complaints against [her] and her complaints about Mr. Guyton yet placed only [her] on leave pending the

---

[3] Defendant also sought to exclude Stepien's proposed exhibit 64—a NOAA EEO policy from March 2021. *Id.* at 7 (citing Dkt. No. 121-10). Stepien subsequently withdrew exhibit 64. Dkt. No. 147 at 8.

outcome," so "[t]he policy is therefore relevant comparator evidence on [her] administrative-leave discrimination claim." Dkt. No. 147 at 7. Based on the Court's prior ruling, Dkt. No. 89 at 30, the Court finds that exhibit 3 is relevant for this limited purpose if the foundation is laid that Guyton was Stepien's "direct or first-line supervisor or a co-worker in the unit" as set forth in the policy. Defendant argues that introduction of policies that relate to dismissed claims and theories would be prejudicial and confusing to the jury, Dkt. No. 120 at 7–8, but the administrative leave claim has not been dismissed.

Stepien requests that the Court "reserve ruling" on her proposed exhibit 56—the NOAA Summary of Ethics Rules—because she believes that "Matlock may offer testimony that he mitigated Doe's proposed removal to a 3 day suspension because expectations of what Doe could and couldn't do according to NOAA policy w[]ere not as clear for Doe based on NOAA's written policies, but expectations about what Stepien could and could not do were clear based on NOAA written policies." Dkt. No. 147 at 8. Based on that explanation, the Court reserves ruling on this exhibit. Dkt. No. 121-11.

Defendant also contends that the Court should prevent witnesses Cokelet and Feely—both research scientists—from testifying about any of these policies because they lack the foundation to do so and their knowledge of the policies is limited. Dkt. No. 120 at 8. Cokelet has never worked in human resources, and his knowledge of NOAA's policies appears limited to attending annual employee training. *Id.* (citing Dkt. No. 121-6 at 3–4). Similarly, Feely has a general understanding of NOAA's antiharassment and retaliation policies but has never handled a discrimination complaint. *Id.* (citing Dkt. No. 121-5 at 3–8). Stepien argues that Defendant's objections go to weight, not admissibility, and their personal knowledge about the policies is sufficient under Evidence Rule 602. Dkt. No. 147 at 8. It does not appear that Stepien is arguing that these witnesses have any familiarity with exhibit 56—the NOAA Summary of Ethics Rules—so that leaves only

exhibit 3, Allegations of Harassment Prohibited by Federal Law. Dkt. No. 121-8. Based on the deposition testimony the parties cite in their briefs, it is not clear that Cokelet and Feely have familiarity with exhibit 3 or the specific provision at issue here. The Court therefore defers ruling as to whether they have the relevant personal knowledge.

This motion is granted in part, denied in part, and deferred in part.

4. Defendant's Motion to Exclude Evidence Regarding "Cat's Paw" Theory

Defendant argues that Stepien's proposed jury instructions indicate that she intends to present a "cat's paw" theory of liability to the jury, but she is too late to raise this new theory of liability. Dkt. No. 120 at 8–10; *see also* Dkt. No. 141 at 17 (proposed jury instruction alleging that Guyton's or McClure's motives caused NOAA to propose her "suspension, place her on administrative leave, or propose and terminate her employment"). A cat's paw theory seeks to hold the employer liable "for the animus of a supervisor who was not charged with making the ultimate employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011).[4] Defendant contends that the Court "specifically noted in its summary judgment order that Stepien did not advance" a cat's paw theory. Dkt. No. 120 at 10; Dkt. No. 89 at 42.[5] Defendant argues that the Court "should not allow Stepien to sandbag Defendant with a new liability theory mere weeks before trial." Dkt. No. 120 at 10.

To establish a prima facie claim of retaliation under Title VII or the ADEA, a plaintiff must prove that "(1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse

[4] "The term 'cat's paw' derives from a fable conceived by Aesop" in which "a monkey induces a cat by flattery to extract roasting chestnuts from the fire. After the cat has done so, burning its paws in the process, the monkey makes off with the chestnuts and leaves the cat with nothing." *Id.* at 415 n.1.

[5] In the order regarding the motions for summary judgment, the Court found that Stepien had raised a genuine issue of material fact regarding whether her proposed suspension was motivated by retaliation, but she had not demonstrated any evidence of pretext regarding the final suspension. Dkt. No. 89 at 42. The Court explained that, among other things, Stepien did "not argue that Matlock, who issued the suspension, failed to make an independent decision or was influenced by McClure's proposed suspension." *Id.* Stepien did not raise a cat's paw theory related to her other claims either, but it was unnecessary for the Court to point that out for claims that survived summary judgment.

employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." *Poland v. Chertoff*, 494 F.3d 1174, 1179–80 & n.1 (9th Cir. 2007); *see also* Ninth Cir. Model Civil Instruction 10.10. "A plaintiff can use a cat's paw theory to establish the third element." *Sandowski v. McAleenan*, 423 F. Supp. 3d 959, 979 (D. Haw. 2019). Under a cat's paw theory, a plaintiff must show that (1) "a supervisor perform[ed] an act motivated by [retaliatory or discriminatory] animus," (2) that act was "*intended* by the supervisor to cause an adverse employment action," and (3) that act was "a proximate cause" of the adverse employment action by someone else. *Staub*, 562 U.S. at 422; *see also Acosta v. Brain*, 910 F.3d 502, 514–15 (9th Cir. 2018).

Defendant argues that courts "regularly hold that a plaintiff may not raise a new theory of liability in opposition to a motion for summary judgment—let alone weeks before trial." Dkt. No. 120 at 9; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–92 (9th Cir. 2000) (holding that "theories of liability . . . must be alleged in the complaint in order to provide the basis for later trial or summary judgment"; failure to do so would prejudice defendant because "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations").[6] Stepien does not dispute this notice principle, but she contends that she timely raised this theory of liability because "[t]he Second Amended Complaint alleges facts connecting Mr. Guyton to Dr. McClure and Dr. McClure to Dr. Matlock." Dkt. No. 147 at 8–12. She avers that she was not required to use the cat's paw "label," and "Defendant had notice" of this theory. *Id.* at 11. Stepien contends that her second amended complaint alleged sufficient facts to connect Guyton to McClure by "alleg[ing] that Dr. McClure

[6] *See also Ray v. State Farm Mut. Auto. Ins. Co.*, No. 20-55989, 2021 WL 4902357, at *1 (9th Cir. Oct. 21, 2021) ("It was improper for the Ray Family to advance these new theories for the first time in its opposition to summary judgment."); *Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir. 2014) ("As the district court held, a plaintiff cannot raise a new theory for the first time in opposition to summary judgment. Allowing a plaintiff to proceed on a new theory would prejudice defendants because a complaint guides the parties' discovery putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." (citation modified)).

joined and then led Mr. Guyton's attacks on Plaintiff, revived Mr. Guyton's accusations about her equipment, communicated 'full support of his retaliatory behavior,' and used Plaintiff's response to Mr. Guyton's emails as grounds for the proposed suspension." *Id.* (citing Dkt. No. 28 at ¶¶ 4.32, 4.41, 4.44, 4.48). Taken together, the cited paragraphs alleged that Guyton "attack[ed] [her] credibility" and "add[ed] McClure to help head the attacks beginning with her appearance at PMEL in February 2019, and then to lead the attacks in May 2019 through 2021"; McClure sent an email in May 2019 asking Stepien to "account for the equipment transferred to PMEL from the University of Toledo" in 2016–2017; Guyton sent Stepien "harassing emails" about her absence on a specific day; "McClure used Stepien's honest response" to those emails "as the grounds for 'conduct unbecoming' and a 10-day suspension without pay"; and Stepien filed a formal EEO complaint. Dkt. No. 28 at 11–15. None of these allegations put Defendant on notice that Stepien was alleging a cat's paw theory, that Guyton was involved in the decision-making process for any of the adverse actions, or that Guyton's allegedly retaliatory or discriminatory animus (or his accusations about Stepien's credibility, equipment, or brief absence) caused or influenced McClure's decisions to propose Stepien's suspension or termination or to put her on leave. Instead, Stepien's second amended complaint alleged that her proposed suspension—the only potentially adverse action referenced in the paragraphs she now cites—was caused by her own "honest response" and McClure's allegedly retaliatory motive. *Id.* at 15.[7] This is insufficient to allege that Guyton—as opposed to what Stepien herself said about Guyton—caused the suspension. *See, e.g.*, *Acosta*, 910 F.3d at 515 (cat's paw theory sufficiently established where individuals with a retaliatory motive set a vote "in motion in order to retaliate," including calling the special meeting at which the vote occurred); *Pierce v. E. Bay Mun. Util. Dist.*, No. 24-1260, 2026 WL 2445810, at

---

[7] The "honest response" Stepien seems to be referring to is her May 2019 email to McClure in which she wrote that Guyton should be fired, placed on administrative leave, "or at the very least, be transferred elsewhere like 'a bad priest,'" which led to her suspension. Dkt. No. 89 at 9–10.

*2 (9th Cir. Aug. 20, 2026) (holding that plaintiff sufficiently supported her cat's paw theory of liability when she alleged that another's "false, negative statements about her that were included in an employment investigation were a substantial motivating reason why [defendant's] board members did not select her" for a position); *France v. Johnson*, 795 F.3d 1170, 1176 (9th Cir. 2015) (holding that a "reasonable fact finder could infer that . . . the subordinate employee with a discriminatory animus . . . was involved in and influenced the hiring decisions" because the decision-makers "deferred" to his recommendations); *Sandowski v. McAleenan*, 423 F. Supp. 3d 959, 981 (D. Haw. 2019) (holding that plaintiff had sufficiently alleged a cat's paw theory when a reasonable juror could conclude that the decision-maker would not have fired plaintiff absent the report of alleged misconduct from a supervisor with retaliatory animus). These allegations did not suffice to notify Defendant that Stepien was asserting this theory of liability.

Next, Stepien contends that her second amended complaint alleged that "McClure relied upon the investigation report and other documents to support [her] removal and that Dr. Matlock then denied [her] challenge to it." Dkt. No. 147 at 11 (citing Dkt. No. 28 at ¶¶ 4.75, 4.81). These two cited paragraphs do not provide notice that Stepien was asserting a cat's paw theory either. They allege that Stepien received a copy of the investigation report, Dkt. No. 28 at 22, and that her appeal of the final termination letter to Matlock was denied, *id.* at 24.

Finally, Stepien contends that Defendant had notice through discovery because (1) Guyton testified that he was "frustrated" by Stepien's complaints, Dkt. No. 147 at 12, and (2) "Matlock testified that Dr. McClure relayed Mr. Guyton's concern that Plaintiff might make allegations against him, that Mr. Guyton told him Plaintiff 'had filed a suit against a university for discrimination and that she won that suit,' and that Mr. Guyton told him he was 'scared of Dr. Stepien because she filed a previous lawsuit,'" *id.* None of this establishes that Stepien pleaded a cat's paw theory or—even if a plaintiff could amend her complaint through discovery—put

Defendant on notice during discovery that she intended to pursue that theory. None of it identifies any adverse action or alleges that Guyton made or influenced any such action (or that McClure caused Stepien's final termination). *Staub*, 562 U.S. at 422.[8]

This motion in limine is granted.

5. Defendant's Motion to Exclude Stepien's EEO Complaints

Defendant argues that the Court should exclude Stepien's proposed exhibits 31, 51, and 62—her own written complaints regarding her employment with NOAA—because they "do not evidence any facts in dispute." Dkt. No. 120 at 10 (citing Dkt. Nos. 121-13–121-15). Defendant acknowledges that the complaints show that Stepien engaged in protected activity and when (facts relevant to her retaliation claims), but Defendant is willing to stipulate to those facts. *Id.* Defendant further argues that the complaints are unfairly prejudicial because they are replete with facts that are no longer relevant now that her hostile work environment claim has been dismissed. *Id.* at 11.

Stepien argues that her EEO complaints are relevant "for purposes of notice and retaliatory motive." Dkt. No. 147 at 12. She contends that Defendant's willingness to stipulate to the relevant facts "does not necessarily establish what the relevant officials knew, when they learned it, or how the complaints bear on their subsequent actions." *Id.* She further asserts that the Court could admit the documents with limiting instructions such as "instruct[ing] the jury not to treat that evidence as proof that the complaints were true or as corroboration of the plaintiff's account." *Id.* at 13.

Defendant has agreed to admitted facts describing Stepien's protected activity and the dates of that protected activity. Dkt. No. 143-1 at 4 (proposed pretrial order). Moreover, the Court already granted summary judgment to Stepien that her formal EEO complaints and emails to the

[8] Even if the Court were to construe Stepien's response to this motion in limine as a (procedurally improper) motion for leave to file a third amended complaint, *cf. Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014), the Court would deny that request because the deadline to amend pleadings passed more than four years ago, Dkt. No. 17, she has not explained her undue delay in raising this new theory, *Ray*, 2021 WL 4902357, at *2, and Defendant would be prejudiced by the introduction of a new legal theory just weeks before trial.

EEO office updating her claims were protected activity under Title VII. Dkt. No. 89 at 37. Stepien's EEO complaints themselves do not establish that the decision-makers knew about that protected activity or when they knew, so she will have to establish those facts in other ways regardless. This leaves Stepien's assertion that her "complaints identify whom she was accusing of discrimination or harassment, which is relevant to what the decisionmakers knew, including whether they knew that they themselves were the subjects of her complaints, and to their potential retaliatory motive." Dkt. No. 147 at 13. Stepien lists two such accusations. *Id.* Again, her complaints alone do not establish who had notice of the protected activity, the dates of such notice, or what contents of the complaints were communicated to the decision-makers. Furthermore, the Court presumes based on the existing record that Defendant will either stipulate to these facts, or relevant witnesses can testify to those facts without the need to admit the complaints themselves. *See Gratton v. UPS*, No. 22-3149-TOR, 2024 WL 6048978, at *11 (E.D. Wash. Aug. 28, 2024).[9] Finally, the Court agrees with Defendant that any marginal relevance of the complaints would be outweighed by the prejudice to Defendant and potential confusion to the jury resulting from admitting complaints that are replete with allegations about now-dismissed claims (and potentially allegations that the decision-makers did not know about). Dkt. Nos. 121-13–121-15. Accordingly, the Court grants this motion in limine.

6. <u>Defendant's Motion to Exclude a Prior Complaint Against Guyton</u>

Defendant seeks to prevent Stepien from introducing Guyton's deposition testimony about a complaint made against him in a former job. Dkt. No. 120 at 11. Defendant contends that evidence regarding the complaint against Guyton—who was not the decision-maker in any claim that remains—could confuse the jury and be unfairly prejudicial because "a jury could improperly

[9] The parties are directed to meet and confer and inform the Court by November 25, 2026 (and ideally by the pretrial conference) whether there are additional facts to which they can stipulate.

conclude that Defendant discriminated against Stepien based on other, unrelated claims involving other employees and other decision-makers." *Id.* at 12.

Stepien avers that a complaint was made against Guyton "at his prior [Beaufort,] North Carolina post, including testimony about a request for accommodation and possible counseling related to harassment allegations." Dkt. No. 147 at 14. She acknowledges that Federal Rule of Evidence 404(b)(1) bars a propensity inference, but she argues that "Rule 404(b)(2) permits other-act evidence for a nonpropensity purpose such as motive or knowledge, and Rule 403 permits evidence whose probative value is not substantially outweighed by unfair prejudice." *Id.* She contends that this "Beaufort complaint is relevant because it provides context for [her] 'bad priest' email, which led to [her] proposed suspension." *Id.* Stepien's reason for referring to Guyton as a "bad priest" is only relevant if she provided that context to the decision-makers at the relevant time. Otherwise, the context could not have informed their decision-making. However, Stepien does not state that she provided this context to the decision-maker at the relevant time, *id.*, and it does not appear that she did, Dkt. No. 35-6 at 2 (Stepien writing, "I also would think that Administrative Leave would be warranted for Guyton, and in my opinion, he should lose his job over this, or at the very least, be transferred elsewhere like 'a bad priest'"). And in light of the lack of relevance, the prior complaint would be unduly prejudicial as well. The Court grants this motion in limine.

7. <u>Defendant's Request for the Court to Hear Evidence of Economic Damages Separately</u>

Defendant contends that the Court "should hear testimony about economic damages separate from the jury[.]" Dkt. No. 120 at 13. He argues that although the jury "will be the fact-finder on liability and compensatory (pain and suffering) damages on Stepien's Title VII claim," the Court would "determine her economic loss in the form of back pay (and front pay)" if she prevails. *Id.* And "the Court—not the jury—will also be the fact-finder for Stepien's age-

discrimination claims on both liability and economic damages." *Id.* Although the parties discussed this issue during their meet and confer, Stepien's counsel did not respond with a position before the deadline to file motions in limine. *Id.*

Given Stepien's failure to meet and confer in good faith with Defendant on this issue as required by Local Civil Rule 7(d)(5), the Court does not consider her response. Dkt. No. 147 at 14–15.[10]

The Court will hold an evidentiary hearing to determine Stepien's economic damages—if any—outside the presence of the jury. *See, e.g.*, *Gladle v. U.S. Dep't of Vet. Affairs*, No. 15-57-CAS, 2020 WL 6743734, at *2 (C.D. Cal. Nov. 16, 2020) (granting defendant's motion in limine in Rehabilitation Act case to prevent the presentation of evidence on back pay to the jury and holding that "the Court will determine the appropriate amount at an evidentiary hearing following the jury trial"); *Malone v. Potter*, No. 07-5530-MMM, 2009 WL 10672769, at *2 (C.D. Cal. Feb. 27, 2009) (in Title VII case, granting defendant's request "to bifurcate the determination of back and front pay from the jury's determination of liability and emotional distress damages"). The hearing should occur after the case is submitted to the jury; the Court agrees with the Government that testimony on this issue should be scheduled for the last trial day "[f]or ease of planning[.]" Dkt. No. 120 at 13.

**C. Stepien's Motions In Limine**

1. Stepien's Counsel Did Not Meet and Confer Regarding Some of Her Motions

Stepien's counsel did not meet and confer with Defendant's counsel regarding some of her motions in limine. Local Civil Rule 7(d)(5) requires that "[a]ny motion in limine must include a certification that the movant has in good faith conferred or attempted to confer with other affected

[10] Even if the Court did consider the response, it would not change the outcome.

parties in an effort to resolve which matters really are in dispute. A good faith effort to confer requires a face-to-face meeting or a telephone conference." Stepien's motion includes the following purported certification: "Counsel for the parties met and conferred by telephone regarding motions in limine and the topics described below. The parties could not come to agreement." Dkt. No. 139-1 at 4. However, the motion is signed by attorney Nolan Lim, who did not attend the meet and confer conference. *Id.* at 16;[11] Dkt. No. 146 at 2 (Defendant's counsel stating in a declaration that on October 15, 2026, he and co-counsel met with Stepien's counsel John Eklof). Defendant's counsel states that Eklof raised only some of Stepien's motions in limine topics in the parties' meet and confer. Dkt. No. 146 at 2. Specifically, Eklof raised four topics, and generally objected to "unidentified exhibits based on 'hearsay and relevance' objections" but "could not identify which exhibits would be the subject of this motion or explain the bases for the objections." *Id.* Lim's declaration filed with Stepien's motions does not address the meet and confer. *See generally* Dkt. No. 123. Moreover, on October 16, 2026—after the parties met and conferred—Lim sent an email to Defendant's counsel listing 61 exhibits he planned to object to and stating that he was "still working on [Stepien's] MIL, though, so this list [of documents] may change." Dkt. No. 146-1 at 2. He also listed 15 rules of evidence that applied "[g]enerally speaking[.]" *Id.* According to Defendant, Stepien met and conferred only about moving to exclude (1) after-acquired evidence (MIL #1), (2) witnesses not mentioned in the proposed removal, and (3) unidentified exhibits based on "hearsay and relevance" objections. Dkt. No. 145 at 1–2. Stepien's counsel also conferred about seeking permission to ask leading questions. *Id.* at 2; *see also* Dkt. No. 146 at 2. The Court finds nothing in the record to show that the parties met and conferred about the other issues Stepien raises in her motions in limine.

[11] In addition, a brief alone is insufficient to support factual assertions. Local Civil Rule 7(b) requires that factual assertions be supported by "affidavits, declarations, photographic or other evidence[.]"

"[T]his Court has meet and confer requirements for a reason. These requirements are designed to require the parties to meaningfully meet and confer before bringing issues before this Court so the Court's and the parties' time and resources are used efficiently." *Morisky v. MMAS Rsch., LLC*, No. C21-1301-RSM, 2023 WL 6215364, at *3 (W.D. Wash. Sept. 25, 2023). As indicated below, a proper meet and confer would have resolved several of the issues Stepien wastes the Court's time with now. Where, as here, a party has violated Local Civil Rule 7(d)(5)'s requirement to meet and confer, "the court may take action as stated in LCR 11[.]" LCR 7(d)(5). Furthermore, this Court has already warned Stepien time and again about the consequences for violating the Local Civil Rules, yet she has violated the rules repeatedly. *See* Dkt. Nos. 128, 136. As the court did in *Morisky*, this Court STRIKES the motions in limine about which Stepien failed to confer. Furthermore, as a consequence of Stepien's counsel's continued and repeated violations of the Local Civil Rules as described here and elsewhere in this Order, the Court imposes $500 in sanctions. LCR 11(c).

2. <u>Stepien's Motion to Exclude After-Acquired Evidence</u>

Stepien contends that the Court should exclude Defendant's after-acquired evidence because Defendant disclosed it too late. Dkt. No. 139-1 at 5–8. Under the after-acquired evidence defense, "[a]n employer can avoid backpay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can prove by a preponderance of the evidence that it would have fired the employee for that misconduct." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir. 1996). According to Defendant, it raised this defense "after learning Stepien misappropriated several personnel documents of another NOAA employee, John Doe, for her use in this litigation without either Doe's or NOAA's authorization." Dkt. No. 145 at 2–3.

Stepien notes that on October 9, 2026, Defendant's pretrial statement for the first time

"identifie[d] Dawn Washington as a witness concerning discipline of other employees who allegedly misused government records, and identifie[d] Dr. Stepien as a witness regarding the after-acquired-evidence defense." Dkt. No. 139-1 at 5 (citing Dkt. No. 123-8 at 5). Stepien argues that because of the late disclosure—and resulting prejudice to her—"the Court should bar questions, evidence, or argument before the jury concerning Dr. Stepien's alleged taking or retention of personnel records, OIG Complaint No. 23-0515, or any related OIG investigation; exclude Dawn Washington as a witness; and exclude any calculation by Defendant's expert that uses April 30, 2023, as the alleged cutoff date for Dr. Stepien's economic loss." *Id.* at 8.

Defendant responds that he disclosed the defense as soon as he became aware that Stepien had allegedly misappropriated documents regarding Doe without permission. Dkt. No. 145 at 2–3. Specifically, on March 22, 2023, Defendant received a document production from Stepien's expert Deborah Diamond that included documents regarding Doe that Defendant had not produced in discovery. Dkt. No. 146 at 3. During Diamond's March 24, 2023 deposition, Defendant questioned her about how she received the documents, and, five days later, propounded discovery requests to Stepien on that issue. *Id.*; *see also* Dkt. No. 146-2 at 3–4; Dkt. No. 146-3 at 6–7. Defendant's counsel also asked Stepien about the issue during her April 20, 2023 deposition. Dkt. No. 146-4 at 9–10. Defendant avers that "[o]nly after Stepien's deposition could Defendant conclude it had a 'valid factual basis' for an after-acquired-evidence affirmative defense." Dkt. No. 145 at 4.

On May 3, 2023, Defendant supplemented his initial disclosures "to list Stacey Chalmers as the witness who would testify about the affirmative defense." Dkt. No. 146 at 4; *see also* Dkt. No. 123-7 at 7 (supplemental initial disclosures disclosing Ms. Chalmers as a human resources employee in the "Census Bureau, Department of Commerce" who "has knowledge of information relevant to the affirmative defense of Defendant's disciplinary actions toward others who misused

government records”). Defendant also states that because Ms. Chalmers “is no longer with the Department of Commerce, Defendant has identified a similar official, Dawn Washington, in its pretrial disclosures who will testify on that issue.” Dkt. No. 146 at 4. Defendant also disclosed facts related to the defense in his June 7, 2023 responses to Plaintiff’s Third Set of Interrogatories. *Id.*; Dkt. No. 123-6 at 6 (identifying by name the employee whose records Stepien allegedly misappropriated and the specific administrative order she allegedly violated).

Stepien contends that Defendant did not plead this affirmative defense in his first answer, but at the same time, she concedes that Defendant raised this affirmative defense in his answer to her second amended complaint. Dkt. No. 139-1 at 5; *see also* Dkt. No. 31 at 15 (Defendant’s answer averring, “Plaintiff is not entitled to relief because Defendant would have removed her for other misconduct discovered following her removal from federal service.”). Defendant filed his amended answer on June 1, 2023, Dkt. No. 31, shortly after learning the facts underlying the defense as set forth above. Stepien also complains that Defendant filed his amended answer after the deadline to amend the pleadings, Dkt. No. 139-1 at 6, but this argument is unpersuasive when Defendant was entitled to file an answer to Stepien’s second amended complaint, Dkt. No. 28; Fed. R. Civ. P. 15(a)(3).

Stepien further argues that “Rule 37(c)(1) bars a party from using a witness or evidence it failed to disclose under Rule 26(a) or supplement under Rule 26(e), unless the failure was substantially justified or harmless.” Dkt. No. 139-1 at 6. However, the timeline above shows that Defendant promptly disclosed the defense—in his amended answer, supplemental initial disclosures, and discovery responses—once he learned the facts to support it. Stepien contends that Defendant raised the new defense after the deadline to conduct discovery and file discovery-related motions, Dkt. No. 139-1 at 5–6, but as Defendant points out, Dkt. No. 145 at 5–6, courts have permitted defendants to raise this defense post-discovery when they learn of the underlying

facts late, as was the case here, *see, e.g.*, *Martin v. Arrow Electronics, Inc.*, 336 F. App'x 596, 599 (9th Cir. 2009) (affirming district court's decision to allow defendant to amend the pleadings and the pretrial order once defendant learned of after-acquired evidence during trial); *Atwood v. PCC Structurals, Inc.*, No. 14-21-HZ, 2015 WL 9480024, at *5–6 (D. Or. Dec. 28, 2015) (same). In addition, once Stepien learned that Defendant would assert this defense—approximately three and a half years ago—she did not seek to extend the deadlines to conduct discovery or file a discovery-related motion.

Notably, Stepien does not identify a single proposed exhibit number she seeks to exclude on this basis, Dkt. No. 139-1 at 5–8, nor will the Court guess at which exhibit(s) it might be.[12] And although Stepien contends that Defendant disclosed witness Dawn Washington late, Dkt. No. 139-1 at 8, Defendant disclosed witness Chalmers in May 2023 about this issue, Dkt. No. 123-7 at 7. Stepien has shown no prejudice resulting from the substitution of Ms. Washington to testify about the same issue now that Ms. Chalmers is no longer employed by the agency. Dkt. No. 146 at 4. The Court thus denies this motion in limine.

Finally, Stepien asks that if the court permits the after-acquired-evidence defense, it should require "any such matters to be addressed outside the jury's presence in connection with any post-verdict equitable-remedies issues." Dkt. 139-1 at 3. Defendant does not object to this request, "assuming other evidence of economic damages does not go to an advisory jury." Dkt. No. 145 at 7–8. In light of both parties' consent to try this issue to the Court, the Court grants Stepien's request for the Court to consider this issue outside the presence of the jury when it considers potential front

[12] The only document Stepien's motion lists regarding this issue is "OIG Complaint No. 23-0515," without identifying any corresponding exhibit number. Regardless, that OIG complaint comes as no surprise to her for the reasons set forth above. Dkt. No. 139-1 at 8. In fact, Stepien states in her motion in limine that Defendant's Rule 30(b)(6) designee testified—in response to a designated deposition topic and questioning from Stepien's counsel—about "OIG Complaint No. 23-0515 and [Stepien's] alleged retention of Privacy Act-protected records" after Stepien left her employment. *Id.* at 6 (citing Dkt. No. 123-4 at 5–6, 9–11, May 1, 2023 deposition). In violation of Local Civil Rule 10(e)(10), Stepien's counsel did not mark this deposition transcript. Dkt. No. 123-4. As stated in the Court's prior order, Stepien's counsel has violated that rule before. Dkt. No. 89 at 49.

and back pay. *See also Junot v. Maricopa Cnty.*, 67 F.3d 307 (9th Cir. 1999) (unpublished) (remanding for a new trial because after-acquired evidence should not have been considered in the liability phase); *Montgomery v. Union Pac. R.R. Co.*, No. CV-17-00201-TUC-RM, 2019 WL 1790281, at *3 (D. Ariz. Apr. 24, 2019) ("Although *Junot* is not precedential, it is persuasive authority that the correct course is to limit after-acquired evidence to the damages inquiry."). Testimony on this issue should be scheduled for the last trial day.

This motion is granted in part and denied in part.

3. <u>Stepien's Motion to Exclude Erick West's October 9, 2026 Supplemental Report as Hearsay</u>

Stepien argues that the Court should exclude Defendant's economic expert Erick West's October 9, 2026 supplemental report as hearsay. Dkt. No. 139-1 at 8–9. Stepien's counsel did not meet and confer on this issue, Dkt. No. 146 at 2, so this motion is STRICKEN.[13]

4. <u>Stepien's Motion to Exclude the Goodman Investigation Files and Third-Party Statements the Removal Never Cited, and Limit the Goodman Report</u>

Stepien argues that the Court should exclude the investigation files and third-party statements from the Goodman investigation that the removal decision did not specifically cite. Dkt. No. 139-1 at 9. Stepien's counsel did not meet and confer on this issue, Dkt. No. 146 at 2, so this motion is STRICKEN.[14]

---

[13] Defendant states in his response that he did not list the supplemental report as a trial exhibit and does not plan to offer it as such. Dkt. No. 145 at 8–9.

[14] Even if the Court were to consider this motion, it would deny it. Defendant argues that it will seek to admit two reports from Commerce Department investigators Steve Goodman and Kirk Essmyer concerning their investigation of Stepien's conduct not for the truth of the matter asserted—that Stepien committed misconduct—but "because they evidence the employer's good-faith belief in its nondiscriminatory reasons for its actions." Dkt. No. 145 at 9 (listing Exhibits 560 and 565). That is, Defendant anticipates that McClure and Matlock "will both testify that they reviewed Goodman's investigative reports and relied on them when making their decisions." *Id.* at 10. Offered for this purpose, the reports are not inadmissible hearsay. Beth Slikas's exit interview (Exhibit 541) is not hearsay for the same reasons; it is admissible to undergird McClure's decision to place Stepien on leave (if considered as part of that decision). Dkt. No. 145 at 10. Defendant has withdrawn exhibits 561 and 563. Dkt. No. 144 at 1. Emails sent to Stepien by Butterfield and Jim Guyton regarding proper supervision of UW employees, including Slikas (Exs. 536 (Dkt. No. 129-21) and 537 (Dkt. No. 129-122)) are admissible if considered by the decision-makers. (The Court notes that Stepien states in conclusory fashion that certain exhibits should be excluded under certain rules of evidence without making any effort to explain why. Dkt. No. 139-1 at 10. The Court will not manufacture reasons for her.)

5. Stepien's Motion to Confine Evidence of Dr. Stepien's Conduct to the Charging Documents and Limit the "Laboratory Experience" Witnesses to only those Witnesses Who Were Directly Cited in Discipline Determinations

Stepien argues that while she "does not seek to exclude exhibits tied directly to the charged specifications," she does seek to exclude "emails and episodes that no charging document mentions," including the following documents:

> Exs. 501 (Stepien emails to Snyder), 502 (Stepien email to Shambaugh), 503 (Stepien email to Shambaugh), 504 (Stepien emails to Andrews), 506 (Stepien to Slikas re Andrews), 507 (compilation of Stepien emails to Slikas Apr.-Oct. 2019), 508 (Stepien email to Paight and Slikas), 510 (Stepien emails to Paight), 515 (compilation of Stepien emails to Lee during internship), 516 (Stepien email to Paight re Matt), 517 (Stepien email to Galaska re Slikas), 519 (Stepien email to McClure re Lee), 520 (Stepien email to others re Eichler), 521 (Stepien email to UW re Lee), 523 (Stepien email to UW re Lee poster session), 524 (Stepien-McClure re Lee poster session), 525 (Stepien emails to Lee re conference), 526 (Stepien email to UW re Lee conference submission), 527 (Stepien email to conference re Lee conference submission), 528 (compilation of emails re Slikas invoice), 530 (compilation of Stepien emails to Slikas Nov. 2019-Feb. 2020), 538 (Stepien re Andrews), 555 (Stepien-Keister), 557 (Stepien emails to Lee), and 559 (McClure-Stepien re Lee poster presentation).

Dkt. No. 139-1 at 10–11. Stepien also argues that "Defendant's 'laboratory experience' witnesses—Andrews, Slikas, Lee, Paight, McAllister, Butterfield, and Zorn" should be excluded based on Defendant's late disclosure,[15] or if not excluded entirely, "limited to conduct cited in a charging document pursuant FRE 403 and 404(b)." *Id.* (seeking exclusion of exhibits 501–504, 506–508, 510, 515–517, 519–521, 523–528, 530, 538, 555, 557, and 559 "except to the extent Defendant establishes outside the jury's presence that a specific portion was cited in a charging document"). Stepien's counsel did not meet and confer on any issue in this MIL other than excluding witnesses not mentioned in the proposed removal, Dkt. No. 146 at 2, so the remainder of the motion is STRICKEN.[16]

---

[15] Stepien's motion in limine 10 addresses the alleged late disclosure.

[16] Even if the Court were to consider this portion of the motion, it would deny it. The same logic that applies to witnesses (discussed below) also applies to documents. Furthermore, Stepien fails to elaborate on or explain this

Defendant argues that "[t]his motion, and parts of several of Stepien's other motions in limine, turn on the same flawed premise: that Defendants' evidence at trial must be limited to the facts and documents stated in the written notices given to Stepien informing her of her suspension, paid administrative leave, and removal." Dkt. No. 145 at 12. Defendant contends that to support her argument, Stepien relies on Federal Circuit case law, Dkt. No. 139-1 at 11, but that authority did not address claims under employment discrimination statutes like Stepien brings here. *Id.* Instead, the Federal Circuit was reviewing "civil-service only claims"—claims brought only under the Civil Service Reform Act. *Id.*; *see also Crowe v. Wormuth*, 74 F.4th 1011, 1022–23 (9th Cir. 2023) (explaining the difference and the appeal process to the Federal Circuit). As Defendant notes, the Federal Circuit in the cited cases could not have been reviewing claims under federal antidiscrimination laws because it lacks the power to do so. Dkt. No. 145 at 12 (citing *Perry v. MSPB*, 582 U.S. 420, 422 (2017)). Here, the Court finds no basis to exclude witnesses just because they were not specifically listed in the charging documents. Nor does the Court read Defendant's proposed exhibits as seeking free rein to introduce "impermissible character and propensity evidence under FRE 404(a) and 404(b)" as Stepien fears. Dkt. No. 139-1 at 11. Rather, it appears that Defendant will seek to use the evidence to show why the decision-makers acted as they did, which is permissible. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856–57 (9th Cir. 2002) (explaining single-motive and mixed-motive cases and that the "employee's ultimate burden of proof in all cases remains the same: to show by a preponderance of the evidence that the challenged employment decision was 'because of' discrimination"); *Jones*, 702 F.2d at 205.

This motion is denied in part and stricken in part.

---

request: "The Court should permit proof of the existence of the 2018 reprimand and 2019 suspension as prior discipline but bar relitigation of the underlying conduct and exclude Ex. 503 outright under FRE 403 and 404(b)." Dkt. No. 139-1 at 12. The Court will not speculate on rationale when Stepien makes no effort to provide one.

6. Stepien's Motion to Exclude Specific Portions of Paight's Testimony

Stepien seeks to exclude several statements from Dr. Paight as set forth in his declaration, Dkt. No. 38. Dkt. No. 139-1 at 12–13 (listing four statements). Stepien argues that these statements are irrelevant to the charged conduct and unfairly prejudicial. *Id.* Stepien also asks the Court to preclude Dr. Paight "from repeating out-of-court statements by others unless Defendant establishes a nonhearsay use or applicable exception." *Id.* at 12.[17] Stepien's counsel did not meet and confer on this issue, Dkt. No. 146 at 2, so this motion is STRICKEN.[18]

7. Stepien's Motion to Exclude Snyder Testimony, the Snyder Declaration, the Hennessy Emails, Exhibit 501, and Pre-PMEL Conduct

Stepien seeks an order "barring any testimony or argument based on the Snyder declaration, Dkt. 44, or its exhibits, including the Hennessy emails Dkts. 44-2-44-8," any evidence of Stepien's conduct with other employes before she worked at NOAA; and "Exhibit 501, which has no sponsoring witness on Defendant's list and is irrelevant under ER 403 and 404(b)." Dkt. No. 139-1 at 13. She argues that "pre-federal-employment conduct is inadmissible propensity evidence under FRE 404(b), its limited relevance is substantially outweighed by unfair prejudice, confusion, and collateral litigation under FRE 403, . . . the Hennessy emails lack a sponsoring witness with personal knowledge and contain hearsay under FRE 602 and 801–802," and "the Court should also bar inquiry into the circumstances of Dr. Stepien's departure from her prior

---

[17] This request simply asks the Court to enforce the hearsay rules and is therefore unnecessary. *United States v. Pilisuk*, No. CR22-001 TL, 2023 WL 576523, at *5 (W.D. Wash. Jan. 27, 2023).

[18] Even if the Court were to consider this motion, it would deny it. Defendant states that it does not intend to present the first of the four listed statements—the "pregnancy statement"—and would have told Stepien that had she properly met and conferred. Dkt. No. 145 at 13–14. Defendant further argues that there is no basis to exclude the other three statements. *Id.* at 14. These statements are that (1) Stepien disclosed to Paight a student's medical history, (2) Stepien engaged in scientific misconduct, and (3) Stepien required the team to come in during the COVID-19 pandemic. Dkt. No. 139-1 at 13 (citing Dkt. No. 38 at 3–4). Defendant contends that Paight raised his concerns with McClure "both in person and in a letter," and he resigned his job because of Stepien. Dkt. No. 145 at 14; Dkt. No. 38 at 5. McClure testified during her deposition that as part of her decision to place Stepien on administrative leave, she considered the allegations of Stepien's "poor behavior" and scientific misconduct from Paight. Dkt. No. 146-7 at 5–6, 12, 18. Accordingly, the Court will not exclude Paight's statements to the extent that McClure or another decision-maker considered them as part of an action at issue in this case.

academic position." *Id.*[19]

Defendant responds that Stepien did not meet and confer on this topic. Dkt. No. 145 at 14. Again, the Court STRIKES this motion based on the failure to meet and confer. [20]

8. <u>Stepien's Motion to Exclude Race- and National-Origin-Related Allegations Involving Ellen Lee</u>

Stepien contends that witness Ellen Lee's testimony should be "restricted to the one email she is referenced in," although Stepien does not identify that email. Dkt. No. 139-1 at 14. Stepien argues that exhibits 515, 519, 521, 522, 523, 524, 525, 526, 527, 529, 557, 559 should be excluded because they "were not cited specifically in Dr. Stepien['s] proposed or final removal" and the Court should preclude Lee from testifying that "Dr. Stepien questioned Dr. Lee's citizenship and commented on the smell of 'Asian food.'" *Id.* According to Stepien, "[t]hose allegations create an acute risk that jurors will decide this case by punishing Dr. Stepien for perceived bias rather than deciding whether NOAA discriminated or retaliated against her." *Id.*

Defendant responds that Stepien did not meet and confer about this issue. Dkt. No. 145 at 15. Again, the Court STRIKES this motion based on the failure to meet and confer.[21]

[19] Snyder worked with Stepien while she was at PMEL from late 2016 until about July 2019: he was a student at the University of Toledo, and she was his PhD advisor. Dkt. No. 44 at 1. When she left University of Toledo, he "came with her to Seattle while [he] continued working towards getting [his] PhD." *Id.* He also worked in Stepien's lab in 2019 as a University of Washington JISAO employee. Dkt. No. 36-1 at 2.

[20] Even if the Court were to consider this motion, it would deny it. Defendant states that he "did not list Matt Snyder as a trial witness, and did not include among [his] proposed trial exhibits Snyder's summary judgment declaration (Dkt. 44) or any of the exhibits to it, including the 'Hennessy emails.'" *Id.* Nor does it appear that Defendant is planning to elicit testimony about Stepien's prior employment or her departure from her prior position. *Id.* Accordingly, there is no dispute about these issues.

As for exhibit 501, Defendant disagrees with Stepien that it lacks a "sponsoring witness" because the "exhibit contains emails sent by Stepien herself, who can authenticate them," and Stepien's argument that the exhibit "reflects 'pre-federal-employment conduct' is unfounded" when the emails were sent to Snyder from Stepien's NOAA account. Dkt. No. 145 at 15; *see also* Dkt. No. 123-10 (exhibit 501). Defendant also contends that "UW raised Stepien's treatment of Snyder to NOAA as one of their concerns in Spring 2020, *see* Dkt. 36-1; and the Goodman investigation report directly quoted these particular emails, *see* Ex. 560 at USAO_302, and therefore were part of the material McClure and Matlock considered in making their decisions." Dkt. No. 145 at 15. The Court agrees with Defendant. Although Stepien again perfunctorily lists Rule 403 in her motion, she makes no attempt to explain why exhibit 501 is unduly prejudicial. Dkt. No. 139-1 at 13.

[21] Even if the Court were to consider this motion, it would deny it. As set forth above, the Court rejects Stepien's

9. Stepien's Motion to Exclude Post-Removal Conduct and Witness Communications During Litigation

Stepien seeks to exclude testimony about her post-removal conduct and communications with witnesses during this litigation because "[c]onduct after the removal decision could not have motivated it and is irrelevant to whether the removal was discriminatory or retaliatory." Dkt. No. 139-1 at 14.

Defendant responds that Stepien did not meet and confer about this issue. Dkt. No. 145 at 16.[22] Again, the Court STRIKES this motion based on the failure to meet and confer.[23]

10. Stepien's Motion to Permit Leading Questions of Adverse Witnesses

Stepien requests an order "permitting leading questions during her direct examination of Defendant's officers, employees, agents, Rule 30(b)(6) designees, decisionmakers, supervisors, investigators, and other witnesses identified with Defendant, including Michelle McClure, Gary

---

premise that an exhibit is inadmissible unless it was "cited specifically" in her proposed or final removal. Defendant has shown the relevance of Lee's allegations that Stepien mistreated her and that she reported those concerns to UW and NOAA. *Id.* Presuming Defendant lays a proper foundation, there is no basis to exclude the listed exhibits.

Stepien also cites Rule 403 (and seven other rules of evidence) without any argument or explanation. Dkt. No. 139-1 at 14. Pursuant to the party presentation doctrine, the Court will not invent arguments for her. *See Clark v. Sweeney*, 607 U.S. 7, 9 (U.S. 2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Stepien's only specific argument in this motion in limine is that it would be unfairly prejudicial to allow testimony that Stepien questioned Dr. Lee's citizenship and commented on the smell of "Asian food." Dkt. No. 139-1 at 14. Defendant responds that the allegations "carry significant probative value" because they were set out in the Goodman report, Dkt. No. 130-13 at 11, "which both McClure and Matlock read and relied on when making their decisions about Stepien's employment," Dkt. No. 145 at 15. The Court agrees with Defendant that the comments are relevant on that basis and not unfairly prejudicial.

[22] It does not appear that Defendant plans to introduce evidence of Stepien's accusation against Galaska, *see id.*, a fact that Stepien should have explored in the meet and confer.

[23] Even if the Court were to consider this motion, it would deny it. Defendant argues that the alleged conduct is relevant to bias in certain testimony. Specifically, Defendant "has learned in discovery that Stepien has communicated with some witnesses about the substance of this lawsuit following her removal, possibly seeking to influence their testimony or ameliorate feelings over her past conduct." *Id.* at 17. Defendant avers that "Edward Cokelet testified that after her removal, Stepien told him that she had filed a lawsuit and that 'there may have been some prejudice because of that, let's just say, against her.'" *Id.* (quoting Dkt. No. 146-8 at 13). Defendant also states that Stepien "reached out to former lab member Kim Andrews following her lawsuit." *Id.* (citing Dkt. No. 42 at 3–4). Defendant argues that it "should be able to elicit testimony that will allow it to 'describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.'" *Id.* (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). The Court agrees with Defendant that the post-termination communications are relevant and admissible for that purpose.

Matlock, Steven Goodman, and Karolyn Turcotte" under Federal Rule of Evidence 611. Dkt. No. 139-1 at 14–15. Defendant responds that Stepien has not established a right to cross-examine witnesses she calls in her case in chief regarding her alleged emotional distress, including Feely and Cokelet. Dkt. No. 145 at 17. The Court agrees; Stepien's conclusory request does not establish a need to cross-examine witnesses she calls. *See* Fed. R. Evid. 611(c) ("Leading questions should not be used on direct examination except as necessary to develop the witness's testimony.").

This motion is denied.

11. <u>Stepien's Motion to Preclude Late-Disclosed Witnesses from Testifying</u>

Stepien seeks an order precluding testimony from Steven Goodman, Abby Zorn, Kim Andrews, Beth Slikas, Ellen Lee, David Butterfield, and Sean McAllister because Defendant disclosed them on May 3, 2023—the final day of discovery—thereby "depriving [her] of a meaningful opportunity to depose them or investigate subjects omitted from Defendant's prior interrogatory responses[.]" Dkt. No. 139-1 at 15. Stepien's counsel did not meet and confer on this issue, Dkt. No. 146 at 2, so this motion is STRICKEN.[24]

---

[24] Even if the Court were to consider this motion, it would deny it. Under Rule 26(a)(1)(A)(i), parties are required to identify "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(e)(1)(A) provides that a party who has made a disclosure under Rule 26(a) must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). As relevant here, Rule 26(e)(1)(A)'s "otherwise" exception imposes "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report." Fed. R. Civ. P. 26(e) Advisory Committee Notes to 1993 Amendments. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendant provides evidence that "Stepien received discovery on each of the challenged witnesses during depositions that made 'known the witness *and* his [or her] connection to the claims or defenses of the proffering party.'" Dkt. No. 145 at 18 (quoting *Tijerina v. Alaska Airlines, Inc.*, No. 22-203-JLS-DTF, 2024 WL 2097902, at *3 (S.D. Cal. May 9, 2024)) (citation modified). As for Goodman, Stepien received his investigation report and took his deposition in April 2023 as a Rule 30(b)(6) witness. *Id.*; Dkt. No. 146-9 at 5. Accordingly, the Court finds that information about Goodman, his investigation, and his report were made known to Stepien during the discovery process. Fed. R. Civ. P. 26(e)(1)(A); *Tijerina*, 2024 WL 2097902, at *4. In Defendant's pretrial statement, he identified Zorn as "a human

**D. The Court Grants in Part and Denies the Motion to Seal**

Stepien has filed a motion to seal certain exhibits because Defendant designated them as confidential during discovery. Dkt. No. 124 at 1–2 (listing exhibits 508, 510, 522, 529, 541, 544, 548, 551, 552, 556, 560–563, 565). Her counsel states, "Plaintiff conferred over email with Defendant and Defendant confirmed that the below exhibits were being maintained as confidential." *Id.* at 2. This is not a proper meet and confer, which requires a telephone call or face-to-face meeting. *See* LCR 1(c)(6); LCR 5(g)(1)(A). Moreover, Stepien's late raising of this issue left the parties insufficient time to resolve it without the Court's involvement. Defendant states that "at midday on the Sunday before the Monday, October 19 deadline for motions in limine, Plaintiff contacted Defendant about the confidentiality designations of several exhibits." Dkt. No. 144 at 2. The following day, "Defendant agreed to remove the confidentiality designation with the request that Plaintiff redact certain personal information from the documents, such as individuals'

---

resources official at the University of Washington with responsibility over JISAO during the time at issue," and stated that "[s]he may testify about how JISAO expressed its concerns about personnel turnover with Dr. McClure." Dkt. No. 123-8 at 5. Defendant stated that Butterfield "may testify about his supervision of JISAO personnel in Plaintiff's laboratory and the concerns expressed to Dr. McClure." *Id.* at 6. During McClure's deposition, "Stepien examined her on Butterfield's supervision of Cooperative Institute (i.e. JISAO) employees and how Butterfield and Zorn began to express concerns about Stepien's treatment of those employees and the turnover in Stepien's laboratory." Dkt. No. 145 at 19 (citing 146-7 at 7–12). And "Stepien asked McClure about the contents of meeting notes between her, Guyton, Butterfield, and Zorn wherein they discuss that 'there has been lots of turnover in [Stepien's] lab' and 'there are issues causing these people to leave.'" *Id.* (quoting Dkt. No. 146-10 at 2). Stepien also "examined Guyton about Butterfield's expressed concerns to him about Stepien's conduct in the laboratory." *Id.* (citing Dkt. No. 146-11 at 7–11). Consequently, the substance of Zorn and Butterfield's knowledge was made known to Stepien during the discovery process through McClure's deposition, Guyton's deposition, and the meeting notes. And as Defendant argues, there was more than a "passing reference" to those individuals; these documents made clear that they brought forward their concerns about Stepien to McClure. *Id.* (quoting *Anigbogu v. Mayorkas*, No. 21-7419-TSH, 2023 WL 8115046, at *5 (N.D. Cal. Nov. 22, 2023)).

Defendant may also call Kim Andrews, Ellen Lee, Sean McAllister, and Beth Slikas to testify "about [their experiences] working in Plaintiff's laboratory at PMEL and [their] reports of that experience to others." Dkt. 123-8 at 6–7. Slikas was disclosed in Defendant's initial disclosures dated March 25, 2022, over a year before the May 2023 discovery deadline. Dkt. No. 23; Dkt. No. 146-12 at 4. During McClure's deposition, Stepien questioned her about her conversations with Lee, and that questioning reflects more than a passing reference to Lee. Dkt. No. 146-7 at 10–12, 14–15. Stepien also questioned McClure about McAllister's complaints about Stepien's "alleg[ed] improper conduct[.]" *Id.* at 17–19. In addition, Stepien questioned Guyton during his deposition about the JISAO employees, including Andrews, Dkt. No. 146-11 at 6–11. Finally, Defendant disclosed signed interview statements from these witnesses as part of the Goodman report. Dkt. No. 130-12 at 2–10 (Andrews), 189–206 (McAllister). Accordingly, these employees' allegations of Stepien's behavior were made known to Stepien during the discovery process. *Anigbogu*, 2023 WL 8115046, at *5.

personal telephone numbers, addresses, and email addresses. Plaintiff indicated that because of the size of some files, it would be impractical to do so, and this motion to seal followed." *Id.*

As for the substance of the motion, Defendant responds that the motion to seal should be denied and Stepien "ordered to refile the documents with redactions" to protect the individuals' private information. Dkt. No. 144 at 1–2. Defendant states that ["t]he only exceptions are the documents marked as Exhibits 561-563—these should be maintained under seal because they were withdrawn as proposed exhibits and are therefore no longer relevant to this action." *Id.* at 1.

Courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City &Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Accordingly, when a district court considers a sealing request, "a strong presumption in favor of access is the starting point." *Id.* (citation modified). This presumption, however, "is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

The standard for determining whether to seal a record depends on the filing with which the sealed record is associated and whether such filing is "more than tangentially related to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–1102 (9th Cir. 2016). If the filing at issue is more than tangentially related to the merits of the case, the court must apply the "compelling reasons" standard to the motion to seal. *See id.* If the filing is only tangentially related to the merits, the party seeking to seal the records need only show "good cause." *See id.*

Here, the Court applies the good cause standard to exhibits 561–563 (at docket entries 130-11, 130-12, and 130-15) because now that Defendant has withdrawn those exhibits, they are not even tangentially related to the merits of the case. The Court finds good cause to maintain those exhibits under seal to protect employees' privacy. Dkt. No. 144 at 3–4 (citing *Delaittre v. Berryhill*,

No. 15-1905-RAJ, 2017 WL 6310483, at *4–5 (W.D. Wash. Dec. 11, 2017)).

The issue regarding the other exhibits should have been resolved in a meet and confer because the parties were required to "explore redaction and other alternatives to filing under seal[.]" LCR 5(g)(3)(A). Stepien's counsel's decision to raise this issue at the last minute, then conclude that it was impractical to redact the documents, has foisted an issue onto the Court that should have been resolved without a motion. The Court orders Stepien to file copies of exhibits 508, 510, 522, 529, 541, 544, 548, 551, 552, 556, and 565 with redactions of the individuals' person information. The sealed copies already in the record can remain under seal to protect employees' private information. This motion is therefore granted in part and denied in part.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART, DENIES IN PART, STRIKES IN PART, and DEFERS IN PART the parties' motions in limine. Dkt. Nos. 120, 127. The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion to seal. Dkt. No. 124. The documents currently sealed at docket entries 125, 126, and 130 may remain under seal, but Stepien must file redacted copies of exhibits 508, 510, 522, 529, 541, 544, 548, 551, 552, 556, and 565 within 14 days of the date of this order. As stated above, the Court imposes a $500 fine on Stepien's counsel for their repeated violations of the Local Civil Rules and the toll it has taken on the efficient administration of this case. The fine must be paid by check to the Clerk of Court, Western District of Washington, by November 25, 2026.

Dated this 18th day of November, 2026.

Lauren King
United States District Judge